Edward G. Baker, J.
This proceeding was brought under article 78 of the Civil Practice Act, by the parents of two children of junior high school age, on their behalf and on behalf of other children similarly situated, all of whom reside in East Flatbush, Brooklyn, New York, to annul a determination of the Board of Education of the City of New York which established a school zone for Junior High School 275 (J. H. S. 275), Brooklyn, a new school scheduled to be opened in September, 1963.
The school site is located at the northeast corner of Linden Boulevard and Rockaway Avenue, in the southerly part of the area known as Brownsville. Petitioners’ children and those others upon whose behalf this proceeding was commenced reside in East Flatbush. They average 11 to 12 years of age, and were graduated in June, 1963 from Public School 233 which is located in that community. In the ordinary course, and had J. H. S. 275 not been built, these children would have attended J. H. S. 285 which is located in their own neighborhood.
The initial task of recommending a school zone for J. H. S. 275, then in course of construction, was assigned to Dr. Morris Blodnick, Assistant Superintendent of Schools in charge of that school district.
In December, 1962 Dr. Blodnick’s recommendation which had been unanimously recommended by the Local School Board, was submitted to Dr. Francis A. Turner, Assistant Superintendent of Schools, the official charged with responsibility for all zoning and zoning changes affecting the public schools of the City of New York. Dr. Turner, members of his staff and other officials rejected the Blodnick recommendation as unsatisfactory for the reasons (1) “ that his proposed zone would have rendered the school site not centrally located and too remote from the northern portion [of the area] and (2) because he had failed to accord adequate consideration to the undesirable de facto segregation of Negro and Puerto Rican children that would obtain in J. H. S. 275 if his plan had been adopted.”
The board officials found that under the Blodnick proposal the racial and ethnic composition of the incoming class would be 52% Negro, 34% Puerto Rican and 14% white; whereas, under the school zone finally approved and adopted, the percentages would be 35.2% Negro, 33.5% Puerto Rican and 31.2% white.
*251 That racial balance was a compelling factor for the rejection of the Blodnick proposal and for the approval by the board of the zone finally adopted is clear. In his affidavit submitted in opposition, Dr. Turner states, in part, that the site for J. H. S. 275 was selected “ with a view to feeding into it children from the East Flatbush area, who are predominantly white, as well as children from two Brownsville Schools who are predominantly Negro and Puerto Rican so as to achieve a measure of integration among the school children in the new school.” A statement issued by Bernard E. Donovan, the Acting Superintendent of Schools, contained the following
“ It is because of our desire to develop Junior High School 275 as an integrated school that we are proposing that it be opened in September, 1963, only with the seventh-grade pupils even though this will leave the school under-utilized for a year. We feel that present seventh-graders now in Junior High School 285, which is located in the area predominantly white, should remain there until graduation in accordance with our policy of maintaining continuity in a pupil’s education and in light of the fact that their present school is not overcrowded. On the other hand, we cannot move more present seventh- and eighth-grade Negro and Puerto Rican pupils from their overcrowded schools to Junior High School 275, Brooklyn, because by so moving them at this time we would disturb the reasonable ethnic balance provided in the zoning proposal for Junior High School 275 and this would be contrary to our established educational policy.”
The quoted portions of the Turner affidavit and the Donovan statement compel the conclusion that respondents’ determination was based in material part on racial factors. As petitioners contend, respondents rejected the Blodnick proposal because they found that it provided only 14% white students; they approved a plan which they said would result in 31.2% white students; and, because it would disturb the racial balance set up by their plan, they determined not to transfer Negro and Puerto Rican children from nearby overcrowded junior high schools to the new under-utilized school. It must be clear that the racial and ethnic balance accomplished by the movement of the boundary of the new school district southwest to East 93rd Street was not fortuitous but was the result of a fixed purpose on respondents’ part to bring more white children into J. H. S. 275.
It is unnecessary to consider whether respondents’ determination was based, in part, on factors other than racial balance. Unquestionably, racial composition or balance was material to *252 the board’s determination, and is incapable of separation from the other factors alleged to have been considered.
The question here to be determined is whether deliberate inclusion of the factor of racial balance as a material basis for the board’s determination renders that determination unlawful.
Section 3201 of the Education Law provides as follows: “ No person shall be refused admission into or be excluded from any public school in the state of New York on account of race, creed, color or national origin.”
As respondents contend, petitioners’ children had no vested, indefeasible right to attend J. H. S. 285, or any other particular public school in the City of New York, except as provided by law. They did, however, along with all other children, of whatever race or color, have the moral and statutory right not to be excluded from any public school in the State by reason of their race or color. That is the plain command of the law. The inclusion of petitioners’ children in the school zone approved for J. H. S. 275, upon the basis of their race, and their consequent exclusion from J. H. S. 285, their traditional neighborhood school, and from other schools to which they might have been assigned upon a lawful basis, was violative of the spirit and intent of the statute.
It is important also to note that for every white child required to attend J. H. S. 275, some child of another race or color will be denied admission. Thus Negro and Puerto Bican children are denied access to a new under-utilized school, because white children, who do not need a new school, are required to attend. (Donovan statement, supra).
Bespondents urge that the history of section 3201 of the Education Law demonstrates that it is an anti-discrimination statute intended to prohibit the segregation of minority groups in the public schools.
Whatever may have been the factors which impelled its enactment, the statute, by its very terms proscribes exclusion from public schools of any child by reason of race, creed, color or national origin.
The court feels that it is unnecessary to reach the issue whether respondents’ action is violative of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States and of sections 6 and 11 of article I of the Constitution of the State of New York. Judgment is directed annulling respondents’ determination.