Charles B. Brasser, J.
Upon the petition of petitioners-plaintiffs, an order was granted by this court directing respondents-defendants to show cause why an order should not be made enjoining and restraining the Board of Education and the Superintendent of Schools of the City of Rochester “ from using public monies and moneys raised by public taxation * * * in connection with the operation of the so-called Open Enrollment Plan, ’ ’ and in transferring students from one public school to another in the City of Rochester for the purpose of correcting so-called racial imbalance.
Petitioners-plaintiffs, hereafter named petitioners, also specifically attack the transfer of students to Public School No. 40 from Public School No. 4, allegedly effected to reduce imbalance and reduce de facto segregation in normally segregated areas.
*274 After the present proceeding was commenced, a petition was filed with the court by Rochester Area Council of Churches, Inc., and Stewart D. Moot, Jewish Community Council of Rochester, New York, Inc., and Dr. Werner I. Halpern, Dr. Nathaniel J. Hurst, as President of the Catholic Interracial Council of Rochester, and Robert F. Taylor, for permission to intervene as respondents-intervenors on the grounds that the issues before the court involved matters of public concern to the community and that the proposed respondents-intervenors represented a substantial cross section of the citizens, taxpayers and parents of the City of Rochester interested in the efforts of the Board of Eduction to correct racial imbalance and de facto segregation in the public schools of Rochester. An order was granted pursuant to CPLR 1013 permitting petitioners to intervene.
By its amended petition, petitioners seek an order restraining the respondents from carrying into effect the so-called Open Enrollment Plan, and from carrying on alleged discriminatory practices in the desegregation of public schools by transporting students from one school to another and particularly from Public School No. 4 to Public School No. 40, and from adopting any steps which might destroy the concept of neighborhood schools in the city in an attempt to achieve racial balance, all of which is alleged to be contrary to the provisions of the Constitutions of the United States and of the State of New York and of the statutes of the State of New York.
Answers filed with the court by respondents-defendants, hereafter named respondents, and respondents-intervenors, hereafter named interveners, are in substantial accord and similar. In their answers respondents and interveners deny generally the allegations of the amended petition. Respondents, in addition, include six objections in point of law which the court shall determine at the outset.
By the first objection, the respondents allege that the instant proceeding is a taxpayer’s action and is untenable on the authority of Schnepel v. Board of Educ. (302 N. Y. 94). The court determines that this is not a taxpayer’s action against the school district, and does not come within the rule that a Board of Education is not a municipal corporation within the meaning of section 51 of the General Municipal Law stated in Schnepel v. Board of Educ. (supra).
The second objection alleges noncompliance with subdivision 1 of section 3813 of the Education Law, in that the action is based upon a claim against the governing board of the City of Rochester, and that a notice of claim should be filed with the governing board within three months after the accrual of such *275 claim. The court concludes that this clearly is not an action pursuant to subdivision 1 of section 3813 (supra) and that no verified claim need be filed.
Under the third objection, respondents maintain that this proceeding falls within the provisions of section 310 of the Education Law, and that petitioners have failed to exhaust their administrative remedies prior to the commencement of this proceeding. This court concludes that this is an article 78 CPLR proceeding, and that it is not required that a preliminary hearing be had before the Commissioner of Education. Moreover it is obvious that under the facts herein, a preliminary review by the Commissioner of Education would be futile since the respondents’ position is that the Open Enrollment policy was adopted pursuant to the Commissioner’s directive. Thus impartiality, under the circumstances, could not reasonably be anticipated by petitioners. Not identical but similar issues were raised and decided in Matter of Balaban v. Rubin (40 Misc 2d 249, revd. 20 A D 2d 438, affd. 14 N Y 2d 193).
The fourth objection alleges that petitioners have failed to assert that the administrative policy of the Board of Education is illegal, arbitrary or capricious. Although the petition is, in some respects, inartistically drawn, it is, in the opinion of this court, sufficient to state a cause of action.
By the fifth objection respondents claim that the petition fails to show that petitioners will suffer irreparable harm or damage in the event that an injunction is not granted. It appears that injunctive relief is but one of the remedies sought herein. Petitioners also seek a review of respondents’ action since the receipt of the Commissioner of Education’s directive, and in addition an order annulling the so-called Open Enrollment resolution. Moreover, the petition does in fact allege that the receiving schools will become overcrowded, that citizens in the neighborhood receiving school will be deprived of their rights as parents and taxpayers, that the neighborhood school concept will be destroyed, that taxes will be increased, that children will be transferred long distances from their resident areas, and that the students in School No. 40 will be deprived of the proper facilities formerly available for educational purposes. The court concludes that enough has been alleged to permit the granting of injunctive relief, if the facts are sufficient. The fifth objection is overruled.
By the sixth objection in point of law, respondents allege that the petition fails to show any wrongdoing on the part of the Superintendent of Schools, and fails to show any act or omission by the Superintendent contrary to the powers and duties *276 imposed upon him by law and under the policies of the Board of Education. Petitioners charge that the Open Enrollment resolution and steps taken in connection therewith were inaugurated to satisfy “ the whims and fancies ” of the Superintendent of Schools, and that if continued the neighborhood school concept will be destroyed. This, in addition to the duties and responsibilities of the Superintendent under the law in implementing the directives of the Board of Education and the Commissioner of Education, is sufficient to justify the inclusion of the Superintendent as a proper party in this proceeding. The court overrules the sixth objection in point of law set forth in respondents’ answer.
As an affirmative defense, the respondents allege generally that what they did in adopting the Open Enrollment resolution and implementing it by the transfer of students from one public school to another was done under and pursuant to a directive of the Commissioner of Education, and that their responsibilities and duties thereunder were inescapable, and, therefore, the petition should be dismissed.
In this respect it must be noted that nowhere in the directive of the Commissioner of Education under date of June 14, 1963 did he specifically charge school administrators to relieve racial imbalance by the transfer of enrolled Negro children. This was left to the ingenuity of the various school administrators throughout the State.
In its answer to the amended petition, intervenors set forth allegations in paragraphs 16, 17, 18 and 19, in the nature of a separate defense containing conclusions of law, and alleging more specifically that the policy of Open Enrollment was inaugurated pursuant to the lawful directives of the Commissioner of Education; that this policy was “ lawfully ” adopted to help correct racial imbalance, is “ educationally sound,” and that the Open Enrollment policy was not adopted and has not been administered “ arbitrarily or capriciously.”
On the return date of the order to show cause, after conference with opposing attorneys, a general stipulation was entered in the record to the effect that this proceeding would be treated by all parties as a proceeding under article 78 CPLR, and that the court would first determine whether or not the action of the Board of Education and Superintendent of Schools in establishing a program of Open Enrollment was unconstitutional and illegal, and that in the event that the court determined that the city-wide policy of the school administrators was constitutional and legal, the narrower issue as to the propriety *277 of the transfer of students from School No. 4 to School No. 40 would be resolved as an issue of fact.
The resolution of the Board of Education directing the completion of plans for open enrollment, adopted November 21, 1963 reads as follows: ‘ ‘ Whereas it is the desire of this Board of Education to move forward with the implementation of its policy on racial imbalance, adopted unanimously at the meeting of August 27, 1963, the Superintendent is directed to complete plans for open enrollment as listed on pages 29 and 30 of the document Racial Imbalance in the Rochester Public Schools in time for implementation beginning with the second semester on February 3,1964.”
Shortly after the adoption of the Open Enrollment resolution, the Board of Education acting through the Superintendent transferred Negro students from School No. 3 to School No. 30 ostensibly to relieve congestion. Citizens and parents of children attending School No. 30 brought a proceeding for an injunction, and the issues were referred to Mr. Justice Easton to hear and determine. No attack was made upon Open Enrollment as a city-wide policy as in the instant case, but the court nevertheless, after determining that the grounds of congestion and overcrowding assigned by respondents for the transfer were incredible, wrote a learned opinion (Matter of Strippoli v. Bickal, 42 Misc 2d 475) in which he covered various facets of the integration problem.
In his decision the court, citing section 3201 of the Education Law, providing that “ No person shall be refused admission into or be excluded from any public school in the State of New York on account of race, creed, color or national origin ”, noted that the statute makes no mention that the exclusion has to be without consent or protest; that the statute is violated by the transfer, and the resolution could be annulled on this basis alone. The court found further that the constitutional guarantees contained in the Constitution of the State of New York (art. I, § 11) and the Fourteenth Amendment of the United States Constitution mean “ that a child should not be enrolled or transported to a certain schoolhouse because he is white or nonwhite ” (p. 485) and that such transfer was an unconstitutional exercise of power by the Board of Education; that the school authorities ‘1 In their anxiety to cure racial imbalance, * * * have invaded the equal rights of the petitioners ” (p. 489), citing the decision in Bell v. School City of Gary (213 *278 F. Supp. 819, 831, affd. 324 F. 2d 209) in which the court said “ Furthermore, requiring certain students to leave their neighborhood and friends and be transferred to another school miles away, while other students, similarly situated, remained in the neighborhood school, simply for the purpose of balancing the races in the various schools would in my opinion be indeed a violation of the equal protection clause of the Fourteenth Amendment.”
The court concluded with the persuasive comment that “ Equality in education, housing, employment and politics is the true goal, and genuine progress in that direction will push the current problem of de facto segregation to the background, as it has for other ethnic groups who have retained their character and identity and still are equal. Our law and our courts must not become mere extensions of sociologists’ workshops. Our citizens must remain free individuals and liberty must not be subordinated to equality.” (Matter of Strippoli v. Bickal, 42 Misc 2d 475, 490, supra.)
The legislative functions of the Board of Regents are not unrestricted but such functions shall be exercised in conformity to the Constitution and laws of the State. (Education Law, § 207.) Thus the City School District is not legally obligated to comply with directives when they run counter to the law. The district’s officials are not mere puppets forced to jump when the Commissioner pulls a, string.
Respondents lay great stress on the landmark decision of the Supreme Court (Brown v. Board of Educ., 347 U. S. 483) and attempt to draw an analogy between de jure and de facto segregation. There is a marked and irreconcilable difference. In the Brown case Negro children in Kansas, South Carolina, Virginia and Delaware were denied admission to schools attended by white children under laws requiring or permitting segregation according to race, and thus were deprived of equal protection of the laws under the Fourteenth Amendment.
The attempt by the school board to correct de facto segregation is not desegregation but discrimination since Negro children, with or without the consent of their parents, are denied attendance at their neighborhood school solely because of color. If Negroes can be denied attendance because of color, other ethnic or religious groups can be denied admittance not only to schools but elsewhere, depending upon the whims and caprices of duly constituted authorities.
Judge Van Voorhis in his dissenting opinion in Matter of Balaban v. Rubin (14 N Y 2d 193, supra) decided in the Court of Appeals May 7, 1964, said (p. 200): “ Color is not the only *279 factor in integration. It would be hopeless for any school board * # * to try to assemble an ideal amalgam by admitting the right quotas or other proportions of cultural, religious or ethnic groups * * # So long as these distinctions are obliterated, for the purpose in question, integration and anti-discrimination are served. Just so soon, however, as the tables are turned, and the position taken that any of these multiform groups are to be promoted in competition with other groups, it becomes discrimination not integration.”
Cases cited involving the racial problem in schools are distinguished from the case at bar since the instant case appears to be the only one before the courts where the school authorities have transported children from a sending school to a receiving school solely to decrease racial imbalance.
It seems to this court that the better interests of minority racial groups would be promoted if school authorities seriously undertook the task of supplying better physical facilities and higher educational standards in the areas populated almost entirely by them.
‘ 'Desegregation does not mean that there must be intermingling of the races in all school districts. It means only that they may not be prevented [italics mine] from intermingling or going to school together because of race or color.” (Brown v. Board of Educ., 139 F. Supp. 468, 470.)
In Briggs v. Elliott (132 F. Supp. 776, 777) the court said: ‘ ‘ The Constitution, in other words, does not require integration. It merely forbids discrimination.” The adoption by the Board of Education of the Open Enrollment Plan and the subsequent implementation thereof in sending and receiving schools was clearly an unconstitutional exercise of power. (Henry v. Godsell, 165 F. Supp. 87; Bell v. School City of Gary, 213 F. Supp. 819, affd. 324 F. 2d 209, supra; Matter of Balaban v. Rubin, supra.) The children attending a public school have a constitutional right to attend that school nearest their homes, and may not be compelled or arbitrarily forced to join a different ethnic group living miles away.
Racial balance in our schools is not constitutionally mandated. The Brown case does not require that white children must be transported into a Negro area in order to desegregate a Negro school, nor that Negro children who live in noncontiguous areas shall be transported into a white area in order to desegregate a white school. "In actual operation, it is impossible to maintain and preserve the original ethnic composition, and there never was any intent to do so.” (Matter of Balaban v. Rubin, 20 A D 2d 438, 449, supra.)
*280 ‘ ‘ That innocent children of any race should be used as pawns in these weird sociological chess games is nothing ' short of reprehensible.” (Matter of Strippoli v. Bickal, supra, p. 489.)
The times are fraught with momentous problems of great complexity, among the foremost of which is that of civil rights, with which the Congress is now wrestling. Men of good will yearn for the day when all Americans will be, in fact, equal as the founding fathers envisioned. That day cannot be hastened by decrees and directives which arbitrarily ordain where citizens because of color shall live, work, study or worship.
Petitioners’ motion to enjoin and restrain respondents from carrying into effect the Open Enrollment Plan and from implementing to resolution of the Board of Education adopted November 21, 1963, is granted.