BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT No. 2, EAST WILLISTON, TOWN OF NORTH HEMPSTEAD, Petitioner, *v.* NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents. (SUSAN ARLUCK, Complainant.)

BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT No. 2, EAST WILLISTON, TOWN OF NORTH HEMPSTEAD, Petitioner, *v.* NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents. (RACHEL CURTO, Complainant.)

Second Department, June 25, 1973.

*Faruolo, Caputi & Weintraub* (*Frank J. Faruolo, Jr.*, of counsel), for petitioner.

*Henry Spitz (Joan Offner, Adele Graham* and *Ann Thacher Anderson* of counsel), for respondent.

HOPKINS, Acting P. J. Since both of these proceedings raise similar issues, they are considered together. The predominant question is whether a pregnant teacher may be compelled by rule of a board of education to take an unpaid leave of absence not later than five months prior to her delivery, regardless of her physical ability to perform her duties and her desire to continue teaching. The Commissioner of the State Division of Human Rights in each case held that such a practice was discriminatory and in each his holding was affirmed by an order of the State Human Rights Appeal Board. We confirm the order in each proceeding and grant the cross application in each proceeding to enforce the pertinent order in such proceeding.

The facts in each proceeding differ slightly. In the first proceeding, the complainant Susan Arluck had been employed by the petitioner as a social studies and English teacher from September, 1968. In October and November, 1970 she informed the petitioner that she was pregnant; and she asked that her maternity leave begin March 12, 1971. She was instructed instead by the Superintendent of the school district that her leave would begin on January 22, 1971 under the petitioner's policy.

In the second proceeding, the complainant Rachel Curto had been employed by the petitioner as a physical education teacher from September, 1967. She informed the petitioner in October, 1970 that she was pregnant and asked that her maternity leave begin January 1, 1971. She was instructed instead by the Superintendent of the school district that her leave would begin on November 1, 1970 under the policy adopted by the petitioner.

The petitioner's policy in brief required a pregnant teacher to leave her duties without pay not later than five months prior to the time of the anticipated birth.[1] At the administrative hearings and in these proceedings, the petitioner defended the policy as justified by its rightful concern to avoid administrative prob-

---

1. So far as pertinent, the rule of the petitioner declared as follows:

"Faculty members are entitled to maternity leave, without pay. A faculty member must notify the Superintendent of Schools in writing of her pregnancy at the time the condition is determined. Maternity leave shall commence not later than five months prior to such anticipated birth. All recipients of maternity leave shall return to school no later than the first of September or the second of January next succeeding the expiration of one full year from the birth of her child. Approval to return before this time shall be determined by the Superintendent of Schools, taking into consideration such matters as the welfare of pupils, the program, and the teacher involved."

lems arising out of the difficulty of recruiting competent teachers during the school year; moreover, it urges that under law, it has the power and duty "to adopt rules and regulations governing the excusing of absences of all teachers and other employees and for the granting of leaves of absence to such employees either with or without pay" (Education Law, § 1709, subd. 16). The rule providing for maternity leaves, it asserts, is reasonable and applies uniformly to all pregnant teachers, thus avoiding both the appearance and effect of discrimination.

Our first base of review is therefore whether the Human Rights Law (Executive Law, art. 15) applies to the rules adopted by public school authorities. Neither the wide statement of the purposes of the Human Rights Law (Executive Law, § 290), nor the definition of terms used (Executive Law, § 292), nor the provision of our Constitution which it fulfills (N. Y. Const., art. I, § 11) indicates an intent to exclude public employers from the sanctions directed toward discriminatory practices under the act. But beyond this inference of the intendment of full power vested in the Commissioner of the State Division of Human Rights over the elimination of discrimination in public schools is the judicial construction of the existence of such power (*Matter of Board of Higher Educ. of City of N. Y.* v. *Carter,* 14 N Y 2d 138; *Matter of Board of Educ. of Syracuse City School Dist.* v. *State Div. of Human Rights,* 38 A D 2d 245; cf. *Board of Educ. of Tuxedo Union Free School Dist. No. 3* v. *State Div. of Human Rights,* 68 Misc 2d 1035).[2]

Having thus decided that the complainants were entitled to carry their grievances to the State Division of Human Rights, we next turn to the issue whether they suffered discrimination as a result of the policy which the petitioner enforced in granting them maternity leaves. The petitioner argues that as the policy applies solely to women, and all as a class are treated similarly, the policy represents a proper exercise of power. True it is that under the equal protection clause of the Fourteenth Amendment to the Federal Constitution distinctions based on rational grounds may be drawn between classes of individuals. The distinctions made " ' must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and sub-

---

2. There is a holding that the Human Rights Law has no application to the right of a board of education to terminate the services of a teacher during the probationary period, but it is to be noted that the affirmance therein by the Court of Appeals was solely on the alternative ground that there was no substantial evidence of discrimination (*Matter of Board of Educ. of City of Albany* v. *State Div. of Human Rights,* 38 A D 2d 657, affd. 30 N Y 2d 925).

stantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike ' ''  (*Reed v. Reed,* 404 U. S. 71, 76).[3]

But the test to be applied here is not the constitutional standard under the equal protection clause, but the statutory standard of the Human Rights Law. The Human Rights Law is undoubtedly a function of the equal protection guarantee, but it reflects a more direct and positive focus. Thus, it discourages by the use of sanctions a practice of employers '' because of the * * * sex of any individual * * * to discriminate against such individual in compensation or in terms, conditions or privileges of employment '' (Executive Law, § 296, subd. 1, par. [a]). Though in a sense the equal protection clause deals with classes, the Human Rights Law in contrast deals with individuals. The statute in essence prevents disparate treatment of individuals, having regard for their abilities, capacities and qualifications (cf. *New York State Div. of Human Rights v. New York-Pennsylvania Professional Baseball League,* 36 A D 2d 364, affd. 29 N Y 2d 921; *Weeks v. Southern Bell Tel. & Tel. Co.,* 408 F. 2d 228). Gender as a source of such differentiation is neutralized and the statute imposes the burden of warranting the exceptional treatment of the individual on the employer (*State Div. of Human Rights v. New York City Dept. of Parks & Recreation,* 38 A D 2d 25, 28).

The true issue before us then is whether the petitioner's policy has a reasonable foundation in requiring a teacher to absent herself after four months' pregnancy, though the teacher has both the desire and ability to continue. The petitioner on this record supports the policy by claiming that the overriding need of securing the continuity of competent instruction, without distracting the students in the middle of the school year by the introduction of a substitute, compels the rigidity of the schedule; this consideration is linked with its claim that the policy allows for a less burdensome administration of the teaching staff, free from the necessity to recruit replacements at inconvenient times during the school year. Under analysis, however, the policy does not achieve the result which is said to be its objective. An arbitrary leave required at the end of the fourth month of pregnancy is no more calculated to facilitate a planned and orderly transition between teacher and her substitute than any other date closer to confinement. The biological phenomenon of con-

---

3. The classic case of discrimination under the constitutional standard lies in a different treatment of the sexes without a rational justification (see, e.g., *Matter of Patricia A.,* 31 N Y 2d 83).

ception and pregnancy is not limited to any particular period in the school year. The petitioner's policy does not assist, therefore, in reaching the point of its promulgation in demanding an involuntary leave at four months, any more than it would by demanding absence at six or eight months.

The policy does present a manifest infirmity by singling out pregnancy among all other physical conditions to which a teacher might be subject as a category for special treatment in determining when leave from duty shall begin. In the case of other conditions such as ailments or the onset of disease, a leave of absence is not required by the petitioner to commence until medical necessity is demonstrated or the teacher voluntarily requests it. Hence, the female teacher is placed under a restriction dependent on sex alone by the terms of the petitioner's policy.

In short, we find that the respondents' determinations that the policy was discriminatory is justified on this record. In confirming the respondents' action, we recognize that the Commissioner of Education has held that a school board may prescribe the duration of maternity leave (see *Matter of Kabatt,* 52 State Dept. Rep. 59 [sustained in *Kabatt v. Board of Educ. of City of Elmira,* 246 App. Div. 886, app. dsmd. 271 N. Y. 629, cert. den. 300 U. S. 657] ; cf. *Matter of Amster v. Board of Educ. of Union Free School Dist. No. 22 Farmingdale,* 55 Misc 2d 961). It need only be pointed out that none of the cited cases involved a review of a determination of an administrative body having sole jurisdiction of discriminatory practices and that the issue with which they were concerned was the length of a maternity leave, not the time of commencement. We recognize too that there is a diversity of view in the Federal courts — some striking down rules similar to the petitioner's policy (e.g., *Green v. Waterford Bd. of Educ.,* 473 F. 2d 629 [2d Cir., 1973] ; *LaFleur v. Cleveland Bd. of Educ.,* 465 F. 2d 1184 [6th Cir., 1972] ; *Williams v. San Francisco Unified School Dist.,* 340 F. Supp. 438 [N. D. Cal., 1972]) and some upholding them (e.g., *Cohen v. Chesterfield County School Bd.,* 474 F. 2d 395 [4th Cir., 1973] ; cf. *Schattman v. Texas Employment Comm.,* 459 F. 2d 32 [5th Cir., 1972].[4]

---

4. It should be noted that the school boards in these cases made claims to support the rules that are not advanced by the petitioner. Thus, it was claimed that students might be adversely affected by the teacher's appearance, or might be tempted to utter disparaging remarks, or that the teacher, because of conditions attendant on pregnancy, would not be able to control the students or carry on her duties. Though none of these claims is before us, we do not believe that they constitute reasons for a sweeping rule applicable to all pregnant teachers.

We are of the opinion that the respondents' determinations fashioning a rule to be followed by the petitioner in granting maternity leaves are fair and reasonable. The State Division of Human Rights must have considerable latitude in its choice of remedies, subject to the requirement that its orders must bear a reasonable relation to the discriminatory practices found to exist and to the legislative policy behind the statute (*Matter of Holland v. Edwards*, 307 N. Y. 38; *Matter of State Comm. for Human Rights v. Kennelly*, 30 A D 2d 310, affd. 23 N Y 2d 722). The orders sought to be enforced in these proceedings require the pregnant teacher, if she desires to continue in service, to submit at the fourth month of pregnancy, and monthly thereafter, a physician's certificate that she is capable of continuing to work; and, on concurrence by the medical director of the school district, the teacher is permitted to continue. This, we think, places maternity leaves on a parity with other leaves of absence, so far as possible.

The orders in addition direct the petitioner to pay to the complainants back pay and fringe benefits for the periods during which maternity leaves were denied contrary to their requests. The petitioner attacks these awards on the ground that they infringe the constitutional provision forbidding donations from the public purse (N. Y. Const., art. VIII, § 1). We do not find that the orders violate the Constitution. They are designed to reimburse the complainants for their losses as a result of the enforcement of a discriminatory rule. If the rule had not been enforced, the evidence before the State Division of Human Rights justifies the conclusion that the complainants would have continued working, in accordance with their requests for leave, and thus would have earned the compensation which the awards represent. As the awards are in the nature of damages, they do not come within the constitutional prohibition (*Matter of Antonopoulou v. Beame*, 32 N Y 2d 126; *Matter of Incorporated Vil. of Freeport Park Comm. v. New York State Div. of Human Rights*, 41 A D 2d 740; cf. *Matter of Teachers Assn., Cent. High School Dist. No. 3 [Board of Educ. Cent. High School Dist. No. 3, Nassau County]*, 34 A D 2d 351).

Accordingly, we dismiss each of the proceedings brought by the petitioner, on the merits, confirm the two orders of the respondent Human Rights Appeal Board and grant the cross applications to enforce the said orders, without costs.

---

It should be further noted that special maternity rules have been prohibited under the Federal Equal Employment Opportunities Act (U. S. Code, tit. 42, § 2000e-2; Code of Fed. Reg., tit. 29, § 1604.10, subd. [b]; 37 Fed. Reg. 6837).

MUNDER, J. (dissenting). The attack here is against certain rules regarding maternity leave adopted by the petitioner school board. I call attention to the admonition of the Supreme Court of the United States contained in *Epperson* v. *Arkansas* (393 U. S. 97, 104): "Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and constraint. * * * By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values."

In this context, the issue here is whether the petitioner's regulation which requires that maternity leave commence not later than five months prior to the anticipated date of birth and that the recipient return to school no later than September 1 or January 2 next succeeding the expiration of one full year after birth, creates an arbitrary or unreasonable classification wholly unrelated to the objective sought to be advanced in adopting it. I conclude not.

The equal protection clause does not deny the States the power to treat different classes of persons in different ways. It does not require "identity of treatment" for all citizens. A legislative classification based on sex has often been held to be constitutionally permissible (see, e.g., *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379, 394–395 [1937] [statute providing minimum wages for women but not men]; *Radice* v. *New York,* 264 U. S. 292, 296–298 [1924] [special statute limiting hours of night work of women in cities with a particular population]). A classification is not constitutionally offensive, i.e., is not discriminatory, if all persons similarly circumstanced are treated alike (see *Reed* v. *Reed,* 404 U. S. 71).

Men and women are not "similarly circumstanced" when it comes to pregnancy. It is ludicrous to state otherwise. No matter what the purpose or policy behind the Human Rights Law, gender as a source of differentiation *cannot* be neutralized when it comes to pregnancy. The simple biological fact is that only women become pregnant. The rule under consideration here treats all those who are similarly circumstanced, namely, pregnant teachers, the same. It recognizes that pregnancy produces certain physical and physiological changes in the mother-to-be which necessarily have an effect on the teacher's performance of her duties. This is dramatically brought home by the complainant Rachel Curto who was employed by the petitioner

as a physical education teacher. The rule also recognizes the essential difference between pregnancy which is a normal condition and one which can be charted and the inherent unpredictability of medical and physical ailments or illness.

The orders under review should be annulled and the cross applications denied.

MARTUSCELLO, SHAPIRO and BRENNAN, JJ., concur with HOPKINS, Acting P. J.; MUNDER, J., dissents and votes to annul the orders and to deny the cross applications, with an opinion.

The two above-entitled proceedings pursuant to section 298 of the Executive Law are dismissed on the merits, the two orders of the State Human Rights Appeal Board reviewed therein are confirmed and the two cross applications (one in each proceeding) to enforce said orders are granted, without costs.