BROOKLYN UNION GAS COMPANY, Petitioner, v NEW YORK
STATE HUMAN RIGHTS APPEAL BOARD et al., Respondents.

Second Department, December 31, 1975

*Cullen & Dykman (John E. Murphy* of counsel), for petitioner.

*Henry Spitz (Ann Thacher Anderson* of counsel), for State Division of Human Rights, respondent.

*Proskauer Rose Goetz & Mendelsohn (Morton M. Maneker, Edward Silver, Sara S. Portnoy* and *Stephen E. Tisman* of counsel), for American Airlines, Inc. (and 15 other corporations), *amici curiae.*

COHALAN, J. The main issue raised by this proceeding is whether the petitioner, a private employer, is obligated to provide the same benefits for pregnancy-related disabilities as are granted for other temporary disabilities, despite the exclusion of pregnancy-related disabilities in the Disability Benefits

Law (Workmen's Compensation Law, art 9) and in the Employee Benefit Plan of the petitioner. As interpreted in cases involving schools and school teachers, the overwhelming weight of authority mandates that the benefits be provided. We think the reasons stated in those cases have no instant application, as will be discussed below.

This proceeding had its genesis in the complaint of a "desk job" clerk of the petitioner (Company). A married woman, she became pregnant and, in writing, requested a six-month voluntary leave of absence. At the same time she orally asked for her four weeks of accumulated sick leave. The former request was granted, the latter denied. However, she was paid for three weeks of accrued vacation time.

In due course, and at almost full term, her child was delivered by Caesarean section. Nothing in the record indicates that the manner of delivery was vital to her survival or to that of her child.[1] Her coverage under the medical plan then in force was continued by the Company during her leave of absence.

Thus, her sole formal complaint is that she was denied the four weeks of sick leave.[2] As to this item, the Company contends that any payments made under its Employee Benefit Plan are completely voluntary on its part. There is no bargaining compulsion and no contract of any kind with any employee group as to this item. Under its "general provisions", the plan states:

"2. Plan is not a Contract. Neither the establishment of the plan nor of these rules and regulations shall be held or construed as a contract or consideration for employment, nor binding the Company at any time to institute or continue the payment of benefits hereunder, nor shall it interfere with the Company in the discharge of any employee or in its treatment of an employee."

Under article VII (Sick Pay), the plan provides:

"The Company's Employee Benefit Plan provides sick pay benefits in addition to such benefits for which provision is required to be made by the New York State Disability Benefits Law (Statutory Benefits).

---

1. The complainant testified that she became pregnant sometime in December, 1971. If we assume it to have been on December, 31, 1971, the birth on October 1, 1972 was 275 days later.

2. She also testified that she was aware of the Employee Benefit Plan and knew that maternity benefits were not included in it.

*"As to Statutory Benefits*

"The Company is self-insured to provide Statutory Benefits to eligible employees. An employee becomes eligible when he has been employed for four or more consecutive weeks including previous employment by covered employers. These benefits are payable for and commence with the eighth consecutive day of disability as defined in the law * * * .

"The maximum duration of benefits is 26 weeks in any period of 52 consecutive calendar weeks or 26 weeks in any one period of disability.

"At present the Company is assuming the entire cost of providing Statutory Benefits and no contributions are required from employees.

*"As to Benefits under the Employee Benefit Plan*

"Employees entitled to Statutory Benefits in respect of any given absence will have their Benefits under the Plan reduced by the amount of such Statutory Benefits."

The mention of statutory benefits—as stated and iterated in the plan at article VII—has reference to section 205 of the Workmen's Compensation Law.

As germane, that section reads:

"No employee shall be entitled to benefits under this article: * * *

"3. for any period of disability caused by or arising in connection with a pregnancy [with an exception not at issue]".

The legislative purpose of this exclusion was that in order "to provide the protection deemed necessary to the workers of the State at reasonable cost, disabilities arising from pregnancy have been excluded." (1948 Report of the New York State Joint Legislative Committee on Industrial and Labor Conditions, NY Legis Doc 1949, No. 67, p 44.)

Thus, it is not gender, as such, which impelled the Legislature to act. Rather, it was, and is, the prohibitive cost which dictated the exclusion. If included it might well have been considered reverse discrimination as male employees and women beyond their childbearing years would have had to support this program even though they could not hope to gain any benefit from it.

The response by the complainant to this unambiguous statute is that it is discriminatory in nature and that, as to maternity benefits, it has been impliedly repealed by the

Human Rights Law (Executive Law, art 15) and specifically by section 296 thereof, which read at the time in question:

"Unlawful discriminatory practices.

"1. It shall be an unlawful discriminatory practice:

"(a) For an employer, because of the age * * * or sex of any individual * * * to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

This argument is rebutted by the facts. Article 9 of the Workmen's Compensation Law (Disability Benefits Law) has been in effect since April 13, 1949 (L 1949, ch 600); subdivision 3 of section 205 has been a part of that law since its enactment.

Article 15 of the Executive Law (Human Rights Law) came into being by virtue of chapter 800 of the Laws of 1951. It derives from the Executive Law of 1909, section 296 of which was added by section 1 of chapter 118 of the Laws of 1945. However, the words "or sex", as a possible subject of discrimination, were not a part of the law until the Legislature inserted them (L 1965, ch 516, § 1), effective September 1, 1965.

From the time of the enactment of the Disability Benefits Law in 1949, until 1965 when the words "or sex" were added, 36 bills to repeal the exclusion of pregnancy were introduced in one or both houses of the Legislature—all without success. From 1965 to date 12 similar bills have been introduced—with a similar lack of success.

With these statistics before us it is difficult to credit the argument of implied repealer. It would impugn the collective intelligence of the Legislature to infer that its left hand did not know what its right hand was doing. From the outset, that body has been able to distinguish the separate and different goals of the two statutes, i.e., payment for off-the-job contracted illnesses as to the one, and equality of status as to the other.

With noted exceptions (see Workmen's Compensation Law, § 201, subd 5), every employer, large or small, must carry disability benefits insurance for his employees. No one would seriously suggest that a merchant so obligated, and employing three or four persons, including one nubile woman, was pursuing a discriminatory practice if he refused to pay maternity benefits to the female employee if she were to become preg-

nant. Is it not then an act of discrimination against a large corporation employing many women of childbearing age if it is forced, under the sanctions of the Human Rights Law, to assume such a financial burden? I think so. An act of corporate kindness should not be transmogrified by administrative fiat into a fixed obligation even beyond the intent of the donor.

I now turn to a consideration of the cases involving pregnancy in school-related matters. Before doing so, however, it should be noted that teachers, unlike private employees, do not come within the provisions of the DBL (see Workmen's Compensation Law, § 201, subds 5 and 6). Teachers are covered by the Education Law (see section 3005-b as to teachers outside the City of New York and sections 2554 [subd 13, par b] and 2573 [subd 12] as to those within the city).

In three cases involving boards of education recently decided by this court *(Board of Educ. of Union Free School Dist. No. 2, East Williston, Town of North Hempstead v New York State Div. of Human Rights,* 42 AD2d 49, affd 35 NY2d 673; *Board of Educ. of Union Free School Dist. No. 22, Towns of Oyster Bay & Babylon v New York State Div. of Human Rights,* 42 AD2d 600; *Matter of Board of Educ. of City of N. Y. v State Div. of Human Rights,* 42 AD2d 854, affd 35 NY2d 675),* the question posed did not reach the issue now before us. Thus, in the *East Williston* case, Mr. Justice HOPKINS stated (42 AD2d, at p 52):

"The true issue before us then is whether the petitioner's policy has a reasonable foundation in requiring a teacher to absent herself, after four months' pregnancy, though the teacher has both the desire and ability to continue." The *Oyster Bay & Babylon* case adopted this rationale, citing the *East Williston* case. The *City of New York* case also cited *East Williston;* we there said, in pertinent part (pp 854-855): "We are of the opinion that the determination that petitioner is guilty of discriminatory practices in its maternity leave policies has been established and that a *pregnant teacher* who goes on maternity leave should be permitted to use sick leave and sabbatical leave to the same extent as *other teachers* suffering from a temporary physical disability for the duration of such disability" (emphasis supplied).

In *Union Free School Dist. No. 6 of Towns of Islip & Smithtown v New York State Human Rights Appeal Bd.* (35 NY2d 371) the issue differed from the one which we face.

There, as Judge JONES stated (p 378): "The new aspect presented in this record is whether a different and more restricted standard is to be applied under the Human Rights Law when the personnel policy in question was the product of bilateral negotiations under the Taylor Law (Civil Service Law, art. 14). The personnel policy involved here would single out childbirth among other physical conditions for special treatment in fixing terms of compensation and of return to employment thereafter. Appellant contends that when the personnel policy, rather than having been unilaterally promulgated by the employer as in *Board of Educ., East Williston and Board of Educ., City of New York (supra)* has been reached under the auspices of the Taylor Law, it may then be struck down only on proof that the policy is 'patently and palpably discriminatory' ".

Judge JONES went on to state, on the same page: "We now hold that personnel policies and practices are no less subject to the constraints of the Human Rights Law because they are the product of negotiations conducted under the Taylor Law."

In the *Islip & Smithtown* case *(supra),* our Court of Appeals distinguished the case of *Geduldig v Aiello* (417 US 484). We, however, deem the latter case to be applicable at bar for the reason that it deals with the cost factor of California's disability insurance system, as the Disability Benefits Law deals with the identical problem in our State. Moreover, we would make no distinction between normal and so-called abnormal pregnancies, and again point out that there is nothing in the record to indicate the necessity of delivery by Caesarean section in this case.

The argument has been advanced that a man who must undergo a prostatectomy would be eligible for disability benefits. If so, and by a parity of reasoning, the argument continues, what justification is there for denying a woman pregnancy-related benefits? The answer is that there is no true basis of comparison. Prostatitis is a morbid, inflamed condition of an organ of the body over which the male has no control. Pregnancy is caused by the introduction of spermatozoa from outside the female body to produce a tumescent condition within. The first is involuntary, the second volitional.

A better example is that of vasectomy vis-à-vis tubal ligation. As to the latter, the Appellate Division, Third Department, decided in *Matter of Fullerton v General Motors Corp., Rochester Prods. Div.* (46 AD2d 251) that a woman who opted

for tubal ligation (sterilization) was not entitled to disability benefits. In construing section 201 (subds 8 and 9) of the Workmen's Compensation Law, Mr. Justice SWEENEY, writing for an unanimous court, noted (p 252):

"The language of the statute is markedly clear. It provides for benefits where the disability is caused by an accidental injury, disease, infection or illness. Manifestly, claimant's disability does not come within the first three mentioned categories. Our issue, therefore, further narrows to whether a purely elective bilateral tubal ligation is an 'illness' within the limits of this statute. We think not. The legislative purpose of article 9 of the Workmen's Compensation Law (Disability Benefits Law) was to extend protection to an employee unable to perform his ordinary work because of disability not incurred within the course of his employment. The Legislature, however, by this statute, has prescribed, as it had a right to do, precisely those disabilities which were contemplated. We must apply the statute as written and not as we might believe it should have been written. (See *People v Olah*, 300 N. Y. 96.)

"In considering the Disability Benefits Law, the Court of Appeals stated that we should take it 'as we find it, and leave for legislative attention any seeming inequities, or unevenness of coverage.' *(Matter of Knapp v. Syracuse Univ.,* 308 N. Y. 274, 275.)* Statutory language which is plain and unambiguous should be construed in its natural and most obvious sense."

Substitute, in the first paragraph, the words "pregnancy-related disability" in place of "elective bilateral tubal ligation" and it fits the instant case "to a T".

Accordingly, the order of the Human Rights Appeal Board should be vacated and the cross motion for enforcement of that order should be denied.

MARGETT, J. (dissenting). The issue presented here is whether the petitioner may refuse to provide benefits for pregnancy-related disabilities because of the exclusion of such benefits from those mandated by the Disability Benefits Law (Workmen's Compensation Law, art 9).

A public employer is obligated by the Human Rights Law (Executive Law, art 15) to provide the same benefits for pregnancy-related disabilities as it grants for other temporary disabilities *(Matter of Board of Educ. of City of N. Y. v State Div. of Human Rights,* 42 AD2d 854, affd 35 NY2d 675). The petitioner, a private concern doing business as a public utility,

voluntarily provides sick leave and disability benefits in excess of the requirements of the Disability Benefits Law.

The married female complainant has been employed by the petitioner as a senior accounting executive. Her duties included the handling of ledgers measuring two feet in length and weighing approximately eight pounds. She became pregnant and continued to work. In her seventh month she complained to her physician that she was not feeling well and could no longer work a full day. He recommended that she take a leave of absence. At that time the complainant had been in the petitioner's employ for almost six years and had accumulated approximately four weeks' sick leave. The petitioner granted her request for a voluntary leave of absence but denied the sick leave on the ground "that the company never had paid for maternity benefits and that they weren't going to start now." Two months later the complainant gave birth by Caesarean section.

Under the pertinent provision of the Disability Benefits Law, an eligible employee is entitled to receive one half of his average weekly wage, with a minimum of $20 per week and a maximum of $75 per week, for a disability commencing on or after July 1, 1970 and before July 1, 1974 (Workmen's Compensation Law, § 204, subd 2). Disability benefits begin with the eighth consecutive day of disability and may not exceed 26 weeks during a period of 52 consecutive weeks (Workmen's Compensation Law, § 204, subd 1; § 205, subd 1). Each employee is required to contribute one half of 1% of his wages up to a maximum of 30 cents per week (Workmen's Compensation Law, § 209, subd 3). The balance of the cost of providing the mandated benefits shall be contributed by the employer (Workmen's Compensation Law, § 210).

Disability is defined as "the inability of an employee, as a result of injury or sickness not arising out of and in the course of an employment, to perform the regular duties of his employment or the duties of any other employment which his employer may offer him at his regular wages and which his injury or sickness does not prevent him from performing" (Workmen's Compensation Law, § 201, subd 9). The statute expressly excludes payment of benefits "for any period of disability caused by or arising in connection with a pregnancy" (Workmen's Compensation Law, § 205, subd 3) and "for any disability occasioned by the wilful intention of the employee to bring about injury to or the sickness of himself or

another" (Workmen's Compensation Law, § 205, subd 4). Short-term disabilities of fewer than eight days' duration are excluded by implication (Workmen's Compensation Law, § 204, subd 1). The employer's statutory obligation may be satisfied by any other plan or agreement which provides benefits at least as favorable as the statutory benefits (Workmen's Compensation Law, § 211).

The petitioner has voluntarily undertaken to provide accumulated sick leave benefits to its employees in addition to what it terms "Statutory Benefits" and to forego any financial contribution from its employees. Apart from the reference to "Statutory Benefits", the petitioner's plan is silent with respect to the types of disabilities for which it has provided benefits. The only testimony with respect to the plan is the complainant's testimony that, for an employee to receive sick pay for any temporary physical disability, he was merely required to "call in sick" in the morning.

In 1973, a number of our decisions involving pregnant school teachers were affirmed by the Court of Appeals on the opinion of Mr. Justice HOPKINS in the *East Williston* (42 AD2d 49, *infra)* case. These decisions were summarized by Judge JONES as follows *(Union Free School Dist. No. 6 of Towns of Islip & Smithtown v New York State Human Rights Appeal Bd.,* 35 NY2d 371, 375–376, mot for lv to reargue den 36 NY2d 807): "We have held that a personnel policy which singles out pregnancy, among all other physical conditions to which a teacher may be subject, as a category for special treatment in determining when leave from duty shall begin is prohibited by the proscriptions of our State's Human Rights Law *(Board of Educ. of Union Free School Dist. No. 2, East Williston v. New York State Div. of Human Rights,* 35 NY2d 673, affg. 42 A D 2d 49). Likewise, we have held that the Human Rights Law requires that a pregnant teacher who takes a pregnancy-related leave must be permitted to take advantage of her sick and sabbatical leave entitlements to the same extent as would be the case were she suffering from some other temporary physical disability *(Matter of Board of Educ. of City of N. Y. v. State Div. of Human Rights,* 35 N Y 2d 675, affg. 42 A D 2d 854)."

In our case the majority concludes that, because *public* employers are not subject to the requirements of the Disability Benefits Law, the "school cases" do not reach the issue before us. Thus, the majority seeks to limit the effect of the

decisions in those cases solely to teachers. In my view, the Human Rights Law is not so limited. The reference to "teachers" in the "City of New York" is obviously due to the fact that the suit was brought by a teacher against the board of education. As a result, the compensation and terms of employment referred to in the Human Rights Law were necessarily compared with those of other teachers.

The majority holds that the petitioner is excused from providing benefits for pregnancy-related disabilities by the exclusion of such disabilities in the Disability Benefits Law. It attaches no significance to the employer's provision of both statutory and extrastatutory benefits, all at no cost to the employee. It characterizes fringe benefits as "an act of corporate kindness" and expresses concern that this not be made "a fixed obligation even beyond the intent of the donor." On this point, the majority's concern is needless; the petitioner has a readily available remedy if indeed the scheme of the Disability Benefits Law frees private employers from the constraints of the Human Rights Law. It need only elect to reduce both the benefits it provides and its contribution to the statutory requirements (Workmen's Compensation Law, § 211, subd 5). However, it must be noted that, under Equal Employment Opportunity Commission guidelines, an employer's provision of sick pay and disability benefits is a *fringe benefit* and, as such, is included in the conditions of employment subject to the Civil Rights Act *(Wetzel v Liberty Mut. Ins. Co.,* 372 F Supp 1146, 1158–1159, affd 511 F2d 199, cert granted 421 US 987; *Gilbert v General Elec. Co.,* 519 F2d 661, 663, cert granted 423 US 822).[1]

More importantly, however, it must be noted that the majority appears to be overlooking decisional law. The personnel policies held discriminatory in both the *East Williston* and *City of New York* cases had been unilaterally promulgated by the employer. Judge JONES noted this when the Court of Appeals held that discriminatory policies are proscribed by the Human Rights Law even where they are the product of negotiations under the Taylor Law *(Islip & Smithtown, supra* [which adopted the opinion of Mr. Justice HOPKINS in the *Town of Babylon, infra,* case]). Mr. Justice HOPKINS had previously called attention to the fact that the discriminatory maternity leave policies in *East Williston* were a unilateral

---

1. The administrative guidelines of the Equal Employment Opportunity Commission are entitled to great deference *(Griggs v Duke Power Co.,* 401 US 424, 433–434).

policy of the employer, holding that such policies are forbidden by the statute despite the fact that they are contained in a bilateral agreement between the employee and a collective bargaining agent *(Matter of Union Free School Dist. No. 6, Town of Babylon v New York State Div. of Human Rights,* 43 AD2d 31, 34, app dsmd 33 NY2d 975).

The majority chooses not to distinguish between normal and abnormal pregnancy, to regard the complainant's pregnancy as normal, and to rely upon the decision of the United States Supreme Court in *Geduldig v Aiello* (417 US 484). While recognizing that our Court of Appeals deemed *Aiello* irrelevant with respect to our Human Rights Law, the majority nevertheless applies that case to the case at bar. As stated by Judge JONES, the *Aiello* court "concluded that the equal protection clause of the Federal Constitution did not preclude a State Legislature from adopting the pregnancy-childbirth classification which was 'rationally supportable' in a social welfare program" *(Union Free School Dist. No. 6 of Towns of Islip & Smithtown v New York State Human Rights Appeal Bd.,* 35 NY2d 371, 376, *supra).*

The California statute, as amended, which was the subject of *Aiello, unlike our Disability Benefits Law,* included benefits for disabilities due to abnormal pregnancies and was funded entirely by employee contributions.[2] However, *like the New York statute,* the California statute excluded benefits for

2. Although this question is not before us, the New York statutory exclusion of benefits "for any period of disability caused by or arising in connection with a pregnancy" would appear to seriously jeopardize the constitutionality of the Disability Benefits Law with respect to disabilities caused by abnormal pregnancies. While *Aiello* was pending in the Federal District Court, the California Court of Appeals construed a similar statute to preclude only the payment of benefits for disability caused by normal pregnancy *(Geduldig v Aiello,* 417 US 484, 490, *supra).* The statute was subsequently amended to include payment of benefits for abnormal pregnancy and delivery *(Geduldig v Aiello, supra,* pp 490–491). It was the statute, as amended, which was the subject of the Supreme Court of the United States' decision in *Aiello.*

Neither title VII of the Civil Rights Act of 1964 (US Code, tit 42, § 2000e *et seq.)* nor the Equal Employment Opportunity Commission's guidelines are mentioned in *Aiello.* The issue was not alleged in the complaint and the question was not raised on argument (see *Communications Workers of Amer., AFL-CIO v American Tel. & Tel. Co.,* 513 F2d 1024). A possible explanation for this omission lies in the fact that the California statute provided for a plan funded entirely by employee contributions while the Civil Rights Act states that it shall be unlawful for an employer to exercise discrimination (US Code, tit 42, § 2000e-2). The New York statutory plan is funded by both employer and employee contributions. *Aiello* is further distinguished from the case at bar by the fact that there was a full record in *Aiello* (see *Communications Workers of Amer., AFL-CIO v American Tel. & Tel. Co., supra,* p 1031).

normal pregnancy and for the first eight days of all other disabilities. Despite the complainant's testimony that she requested a leave of absence, on her physician's advice, *after* she complained to him that she was not feeling well, and despite the fact that she underwent a Caesarean section, the majority characterizes her pregnancy as normal. The majority overlooks the fact that, under the amended California statute considered in *Aiello,* the complainant would have received benefits as that statute explicitly provides for benefits where the claimant is disabled because of a Caesarean section delivery *(Geduldig v Aiello, supra,* pp 490–491).

*Aiello* further discloses that the Supreme Court was particularly impressed by the fact that the statutory program was funded entirely by employee contributions, was self-sustaining, and had required no State subsidy (pp 492–493). The Supreme Court noted that normal pregnancy was not the only class of disability excluded and referred (p 495) to "the other expensive class of disabilities that are excluded from coverage—short-term disabilities." While the New York statute also excludes short-term disabilities, the petitioner's plan does not.

While it is the petitioner's private plan and not the statutory plan which is the subject of this appeal, the following comments are worthy of note. The amendment of the Executive Law in 1965 so as to prohibit sexual discrimination represents a more recent expression of the legislative will than does the 1949 exclusion of benefits for pregnancy-related disabilities in the Disability Benefits Law. Further, the majority stresses the failure of the Legislature to repeal this exclusion. Such emphasis is not altogether accurate. In the past regular legislative session, the Assembly voted and passed the pertinent bill on June 24, 1975 (A.I. 2325, S. Posner). Its companion bill was still in committee when the session ended (S.I. 728, Goodman) and the Senate therefore had no opportunity to vote on this legislation.

Further, any conflict in legislative intent between the two statutes is more apparent than real. The exclusion in the Disability Benefits Law of disabilities arising from pregnancy was based not on principle but upon the pragmatic consideration of providing benefits "at reasonable cost". On the other hand, employer policy is not discriminatory within the proscription of the Human Rights Law if the policy has a "reasonable foundation" *(Board of Educ. of Union Free School Dist. No. 2, East Williston, Town of North Hempstead v New*

*York State Div. of Human Rights,* 42 AD2d 49, 52, *supra). The* employer which demonstrates that its otherwise nondiscriminatory disability benefit program will be jeopardized by the inclusion of pregnancy-related disabilities *ipso facto* presents a reasonable foundation for differentiating between pregnancy-related disabilities and other disabilities. However, "the statute imposes the burden of warranting the exceptional treatment of the individual on the employer" (p 52). At bar, the record is bare of evidentiary facts to support the reasonableness of the employer's policy. As the District Court said in the *Wetzel* case *(supra,* p 1162): "Again, we have a difficult time in freeing ourselves from stereotype thinking. \* \* \* We may assume from a general knowledge of the conditions of life, that in the normal or usual pregnancy, the period of disability will be relatively short. There is nothing in this record to show, and nothing in our general experience with life indicates that the job-related incidence of disability for pregnancy is any greater or any less than that for a prostatectomy."

Here, the petitioner's plan not only excludes pregnancy-related disabilities, abnormal as well as normal, but, *by its provision of accumulated sick leave benefits, includes short-term benefits.* The petitioner therefore includes in its income protection plan benefits for the "other expensive class of disabilities" excluded in *Aiello* and does so entirely at its own expense.

A number of decisions at the Federal appellate level have held that the exclusion of benefits for pregnancy violates the Civil Rights Act, as interpreted by the administrative guidelines *(Wetzel v Liberty Mut. Ins. Co.,* 511 F2d 199, cert granted 421 US 987, *supra; Gilbert v General Elec. Co.,* 519 F2d 661 [CCA 4th], cert granted 423 US 822, *supra; Hutchison v Lake Oswego School Dist. No. 7,* 519 F2d 961 [CA 9th]). The *Wetzel* court considered the issue of the voluntariness of pregnancy at length and concluded that, because of religious convictions and differing methods of contraception, pregnancy itself may not be voluntary *(supra,* p 206). The *Gilbert* court noted that, in labor arbitration, pregnancy is equated with other disabilities *(supra,* p 665).

The private employer which provides a disability benefit plan for its employees which differs substantially from the statutory plan mandated by the Disability Benefits Law is no more privileged to disregard the strictures of the Human Rights Law, as interpreted by the case law, than is the public

employer. The petitioner's plan, with its provision of benefits including sick leave at no cost to its employees, is significantly different from the mandatory statutory plan and thereby represents the private policy of an employer. It follows that, by failing to provide for pregnancy-related disabilities the same benefits which it provides for other disabilities, the petitioner is pursuing a policy violative of the constraints of the Human Rights Law (*Matter of Board of Educ. of City of N. Y. v State Div. of Human Rights,* 42 AD2d 854, affd 35 NY2d 675, *supra*).

RABIN, Acting P. J., and BRENNAN, J., concur with COHALAN, J.; MARGETT, J., dissents and votes to deny the motion to vacate and to grant the cross motion for confirmation, with an opinion, in which SHAPIRO, J., concurs.

Petition granted on the merits and order of the Human Rights Appeal Board, dated February 18, 1975 vacated; cross motion for enforcement thereof denied, without costs.