AMERICAN AIRLINES, INC., Petitioner, v STATE HUMAN RIGHTS APPEAL BOARD et al., Respondents.

First Department, January 15, 1976

*James B. McQuillan* of counsel *(Bigham Englar Jones & Houston,* attorneys), for petitioner.

*Ann Thacher Anderson* of counsel *(Henry Spitz, General Counsel),* for State Division of Human Rights, respondent.

*Edward Silver* of counsel *(Morton M. Maneker, Sara S. Portnow* and *Stephen E. Tisman* with him on the brief; *Proskauer Rose Goetz & Mendelsohn,* attorneys), for American Telephone & Telegraph Company and others, *amici curiae.*

NUNEZ, J. The complainant, who was hired as a flight attendant by petitioner in February, 1968, became pregnant in November, 1972, and she applied for and was granted a maternity leave of absence on December 18, 1972. At that time, complainant was insured under petitioner's Group Insurance Plan, which provides basic life insurance, accidental death insurance, medical expense benefits and disability benefits. With respect to employees in New York, disability benefits are provided in the amounts specified in the Disability Benefits Law (see Workmen's Compensation Law, § 204, subd 2). The cost of the insurance is paid by petitioner, without contribution from employees.

On April 10, 1973, while on maternity leave of absence, complainant was injured in an automobile accident. Although

advised upon the commencement of her maternity leave that coverage under the Group Insurance Plan could be continued only if complainant paid the cost of such insurance, complainant elected not to do so. Hence, complainant's application for benefits due to the automobile accident was rejected since she was not then covered.

On August 14, 1973, complainant gave birth. She never attempted to return to work, following the commencement of her maternity leave; and on November 14, 1973, she terminated her employment with petitioner.

On June 27, 1973, the complainant filed a complaint with the State Division of Human Rights in which she claimed that she had been denied maternity benefits and was thereby discriminated against in the terms, conditions and privileges of her employment because of her sex, in violation of the New York State Human Rights Law (Executive Law, § 296, subd 1, par [a]). The division found probable cause to credit the allegations of the complaint and set the case down for a formal hearing. Thereafter, on August 28, 1973, complainant filed an amended complaint.

Following the public hearing held on December 21, 1973, the Commissioner of the State Division of Human Rights issued an order on April 22, 1974, in which he found that petitioner had unlawfully discriminated against complainant because of her sex by failing to pay her accrued leave and disability benefits while she was on maternity leave of absence and disabled due to her pregnancy, and by curtailing her right to be covered under petitioner's group insurance plan while on maternity leave unless the cost of such insurance was borne by complainant. The order directed that petitioner cease and desist from such discrimination; and found that complainant had been disabled from December 18, 1972 to October 1, 1973 and was entitled to accrued sick pay (35 hours and 20 minutes) and disability benefits (26 weeks) for that time, as well as for expenses arising out of her automobile accident.

The commissioner further ordered petitioner to "provide sick leave benefits and disability benefits to female employees for other types of temporary physical disability" and to "permit female employees, without. costs to themselves, to be continued as covered employees under any plan providing medical expense benefits during a maternity leave to the same extent that coverage provision is made for other employees on sick leave."

On appeal by petitioner to the State Human Rights Appeal Board, the board on February 27, 1975 modified the order of the commissioner by reducing complainant's accrued sick pay and disability benefit period from "December 18, 1972 through October 1, 1973" to "August 14, 1973 through October 1, 1973," and as so modified, affirmed the order.

This proceeding presents, once more, the problem of whether a pregnancy classification violates the laws against sex discrimination, a problem which in its many manifestations has given the Federal and State courts a great deal of difficulty with confused results. (See *Geduldig v Aiello:* Pregnancy Classifications and the Definition of Sex Discrimination, 75 Col L Rev 441–482.)[1]

Essentially, the resolution of the issue in the instant case depends upon a determination of the effect of the apparent conflict between subdivision 3 of section 205 of the Disability Benefits Law (Workmen's Compensation Law, art 9) and the Human Rights Law (Executive Law, § 290 *et seq.).* Subdivision 3 of section 205 of the Disability Benefits Law provides that no employee shall be entitled to benefits under that article "3. for any period of disability caused by or arising in connection with a pregnancy, except any such period occurring after return to employment with a covered employer for a period of two consecutive weeks following termination of such pregnancy". The Human Rights Law, as amended in 1965, prohibits discrimination because of sex.

In *Geduldig v Aiello* (417 US 484) the Supreme Court was faced with a challenge to the constitutionality of a section of the California Unemployment Insurance Code, which like subdivision 3 of section 205 of our Disability Benefits Law, excluded pregnancy-related illnesses from compensable disabilities. It was held in *Aiello* that the exclusion of pregnancy-related disabilities did not result in an invidious discrimination because of sex in violation of the Equal Protection Clause of the Constitution.

However, as the Court of Appeals held in *Union Free School Dist. v New York State Human Rights Appeal Bd.* (35 NY2d

---

1. See, also, *Wetzel v Liberty Mut. Ins. Co.,* 511 F2d 199, cert granted 421 US 987; *Communications Workers of Amer. v American Tel. & Tel. Co.,* 513 F2d 1024 petition for cert filed June 19, 1975, 43 US Law Week 3684; *Gilbert v General Elec. Co.,* 519 F2d 661, petition for cert filed June 17, 1975, 43 US Law Week 3675, dealing with the exclusion of pregnancy-related disabilities from private employer disability benefits programs as being in violation of title VII of the Civil Rights Act of 1964, as amended.

371) the fact that a sex-based classification was constitutionally permissible under the California insurance program, did not preclude a State from adopting a statute like the Human Rights Law forbidding the exclusion of pregnancy-related disabilities as being discrimination based on sex. As JONES, J. wrote (pp 377–378): "In sum, what the Constitution does not forbid may nonetheless be proscribed by statute."

Thus, it has now been held in *Union Free School Dist. (supra),* that a school district's personnel policies and practices, which were the product of negotiations under the Taylor Law, are subject to the constraints of the Human Rights Law. So too in *Matter of Union Free School Dist. No. 6, Town of Babylon v New York State Div. of Human Rights* (43 AD2d 31) there was involved the enforcement of the provisions of a contract between the School District and the Teachers' Association. Finally, in *Board of Educ. of Union Free School Dist. No. 2, East Williston v New York State Div. of Human Rights* (42 AD2d 49, affd 35 NY2d 673) it was held that a rule of a board of education requiring a pregnant teacher to take an unpaid leave of absence constituted a policy amounting to unlawful discrimination. School districts and boards of education are not subject to the Disability Benefits Law. Hence, whatever may be the validity of the afore-mentioned cases with respect to maternity leaves of absence, they do not have any controlling bearing on the issue of whether the Disability Benefits Law exclusion may coexist with the sex amendment to the Human Rights Law or whether the latter law has impliedly repealed the exclusion under the Disability Benefits Law.

In *Matter of Board of Educ. of City of N. Y. v Allen* (6 NY2d 127, 141–142) the court stated: "It is familiar learning that repeals by implication are not favored by the courts. Generally speaking, a statute is not deemed to repeal an earlier one without express words of repeal, unless the two are in such conflict that both cannot be given effect. If by any fair construction a reasonable field of operation can be found for two statutes, that construction should be adopted". So too in *People v Newman* (32 NY2d 379, 389) reference was made to the long-standing rule "that, unless there is clear evidence of a legislative design to repeal or modify an earlier piece of legislation * * * we must, if at all possible, give full effect to both statutes." (See, also, *People v Mann,* 31 NY2d 253, 257–258.)

Clearly, the Human Rights Law as amended in 1965 did not indicate an express design to repeal subdivision 3 of section 205 of the Disability Benefits Law. Nor is there such an inconsistency between the statutes that it can be decreed that the Legislature intended an implied repeal. The Disability Benefits Law represents a comprehensive scheme of mandatory disability insurance providing for payments when an employee is disabled by nonoccupational injury or sickness. The public policy underlying the enactment of that law is self-evident. The exclusion of disabilities arising from pregnancy (§ 205, subd 3) was predicated upon a finding of the Legislature that the cost of covering pregnancy was incompatible with the level of disability benefits deemed necessary for the protection of employees and their families. Such an important piece of legislation cannot, and should not, be eradicated by implication.

Moreover, between the enactment of Disability Benefits Law in 1949 and 1975, at least 48 bills were introduced in the Legislature expressly to repeal the exclusion of pregnancy, none of which was passed. Were there any basis for the claim of repeal by implication, there would have been no point in, or necessity for, the introduction of bills on at least eleven occasions after 1965 to effect an express repeal.[2]

Both statutes must be considered against the background of the social and economic interests which engendered them. We perceive no hierarchy in these statutes which accords one superiority over the other; and since they are not manifestly repugnant, they are entitled to equal recognition. Their coexistence effects an acknowledgment of the conflicting interests which it is only within the legislative process to resolve.

Until the Legislature speaks more definitely, courts should give full support to both legislative enactments in their present form, and should not by a process of unwarranted inter-

---

2. We recognize that a failure by a Legislature to pass bills is not conclusive of a legislative intent (*Flanagan v Mount Eden Gen. Hosp.,* 24 NY2d 427, 432–433; see, also, Effect of a Failure to Amend, 44 Cornell LQ 336). Yet where a claim of *implied* repeal of a statute is urged, the failure of the Legislature to pass bills providing for an *express* repeal of the same statute has some significant relevancy and cannot be ignored. See *New York State Bankers Assn. v Albright* (38 NY2d 430, 438) (decided Dec. 29, 1975), a case involving the interpretation of a section of the Banking Law, in which BREITEL, Ch. J., writing for the court, considered that "express statutory authorization for savings bank checking accounts has been repeatedly refused by the Legislature" (citing the bills introduced over the years) could be taken into account in interpreting the existing statutes.

pretation eliminate one of the statutes as having been repealed by implication. Any final compromise between the interests which induced passage of subdivision 3 of section 205 of the Disability Benefits Law and the Human Rights Law lies with the Legislature, to be expressed in unmistakable terms. To resolve that conflict under a rubric of implied repeal would constitute nullification and not interpretation, and would by judicial usurpation shift the power of policy making from the Legislature, where it belongs, to the courts.

We hold, therefore, that the Human Rights Law as amended in 1965 did not repeal subdivision 3 of section 205 of the Disability Benefits Law, and that both laws can be given full effect so that the exclusion of pregnancy from coverage under the Disability Benefits Law can coexist with the provisions of the Human Rights Law prohibiting discrimination because of sex.

We have read the decision of our colleagues in the Fourth Department rendered December 12, 1975 in *State Div. of Human Rights v Crouse-Irving Mem. Hosp.* (50 AD2d 1083) holding that the Human Rights Law, as amended, did work an implied repeal of subdivision 3 of section 205 of the Workmen's Compensation Law. In reaching that conclusion, the court in the Fourth Department nevertheless candidly said (p 1084): "In so holding, we are not unmindful of other principles of statutory construction which seemingly militate against such a result." In our view, those principles of statutory construction and all the other circumstances we have noted above compel a conclusion against implied repeal.

Since we decide that maternity-related disability benefits were improperly granted here, we need not consider petitioner's alternate demand for relief seeking a remand to the commission to investigate and make findings of fact with respect to the reasonable foundation for petitioner's personnel practices.

Determination of the State Human Rights Appeal Board, dated February 27, 1975, should be annulled and vacated, on the law, and the order of the commission should be modified to the extent of eliminating therefrom provisions in regard to disability benefits due to pregnancy as to complainant and other employees and as so modified the order should be confirmed, without costs. Settle order.

MARKEWICH, J. P., MURPHY, CAPOZZOLI and LANE, JJ., concur.

Determination of the State Human Rights Appeal Board, dated February 27, 1975, unanimously annulled and vacated, on the law, and the order of the State Division of Human Rights modified to the extent of eliminating therefrom provisions in regard to disability benefits due to pregnancy as to complainant and other employees and as so modified the order is confirmed, without costs and without disbursements.

Settle order on notice.