Jones, J.
 

 This appeal presents another facet of the question whether under the Human Bights Law (Executive Law, art. 15) pregnancy and childbirth may be treated differently in an employment relationship from other instances of physical or medical impairment or disability. We have held that a personnel policy which singles out pregnancy, among all other physical conditions to which a teacher may be subject, as a category for special treatment in determining when leave from duty shall begin is prohibited by the proscriptions of our State’s Human Bights Law
 
 (Board of Educ. of Union Free School Dist. No. 2, East Williston
 
 v.
 
 New York State Div. of Human Rights,
 
 
 *376
 
 35 N Y 2d 673, affg. 42 A D 2d 49). Likewise, we have held that the Human Rights Law requires that a pregnant teacher who takes a pregnancy-related leave must be permitted to take advantage of her sick and sabbatical leave entitlements to the same . extent as would be the case were she suffering from some other temporary physical disability
 
 (Matter of Board of Educ. of City of N. Y.
 
 v.
 
 State Div. of Human Rights,
 
 35 N Y 2d 675, affg. 42 A D 2d 854).
 

 In reaching these determinations we were not unmindful of the decision of the Supreme Court of the United States in
 
 Geduldig
 
 v.
 
 Aiello
 
 (417 U. S. 484). The argument was pressed on us that the Supreme Court had there upheld a California statute establishing an employee disability benefits program which explicitly excluded "disabilities resulting from normal pregnancy and childbirth. Such discriminatory classification having been upheld against constitutional challenge in
 
 Aiello
 
 we were told that the same classification should not then be struck down in the cases before us.
 

 The legal issue in
 
 Aiello,
 
 however, was quite different from that which we confronted. In
 
 Aiello
 
 the court concluded that the equal protection clause of the Federal Constitution did not preclude a State Legislature from adopting the pregnancy-childbirth classification which was
 
 “
 
 rationally supportable ” in a social welfare program. Thus, a sex-based classification was held to be constitutionally permissible in the context of the California insurance program.
 

 A quite different question was put to us. New York had adopted a statute expressly forbidding discrimination based on sex, a classification which while not foreclosed by constitutional prohibition could be proscribed by legislative enactment. The question we faced then was whether the personnel policies and practices in the cases before us transgressed our statutory proscription. That they might not be constitutionally forbidden was irrelevant.
 

 The distinction between constitutional proscription and statutory interdict is illustrated by two recent cases in the Supreme Court. In
 
 Kahn
 
 v.
 
 Shevin
 
 (416 U. S. 351) the court held that constitutional entitlements did not preclude the State of Florida
 
 *377
 
 from allowing a tax exemption to widows but not to widowers. By contrast in
 
 Corning Glass Works
 
 v.
 
 Brennan
 
 (417 U. S. 188) the court construed the Equal Pay Act (U. S. Code, tit. 29, § 206) ,to require an employer to pay female inspectors on the day shift as much base pay as was paid to male inspectors on the night shift. In applying title VII of the Civil Bights Act of 1964 (U S. Code, tit. 42, § 2000e) the Federal courts in several instances have found a classification permitted to lawmakers under the equal protection clause, forbidden to employers under title VII. (E.g., compare
 
 Muller
 
 v.
 
 Oregon,
 
 208 U. S. 412, and
 
 West Coast Hotel Co.
 
 v.
 
 Parrish,
 
 300 U. S. 379 with
 
 Weeks
 
 v.
 
 Southern Bell Tel. & Tel. Co.,
 
 408 F. 2d 228; see, also,
 
 Richards
 
 v.
 
 Griffith Rubber Mills,
 
 300 F. Supp. 338, 340 [“ The particular classification in Order No. 8 may be reasonable under the Equal Protection Clause, but it is no longer permitted under the Supremacy Clause and the Equal Employment Opportunity Act ”];
 
 Wetzel
 
 v.
 
 Liberty Mut. Ins. Co.,
 
 372 F. Supp. 1146, 1159 [“ While a fixed state policy of classification may survive an equal protection attack it may still be violative of Title VII ”].)
 
 [1]
 

 As Mr. Justice James D. Hopkins wrote in
 
 Board of Educ. of Union Free School Dist. No. 2, East Williston
 
 v.
 
 New York State Div. of Human Rights
 
 (42 A D 2d 49, 52,
 
 supra): “
 
 the test to be applied here is not the constitutional standard under the equal protection clause, but the statutory standard of the Human Bights Law. The Human Bights Law is undoubtedly a function of the equal protection guarantee, but it reflects a more direct and positive focus.” In sum, what the Constitution does
 
 *378
 
 not forbid may nonetheless be proscribed by statute. In
 
 East Williston
 
 and
 
 City of New York (supra)
 
 it had been. The case now before us is no different.
 

 The new aspect presented in this record is whether a different and more restricted standard is to be applied under the Human Eights Law when the personnel policy in question was the product of bilateral negotiations under the Taylor Law (Civil Service Law, art. 14). The personnel policy involved here would. single out childbirth among other physical conditions for special treatment in fixing terms of compensation and of return to employment thereafter.
 
 [2]
 
 Appellant contends that when the personnel policy, rather than having been unilaterally promulgated by the employer as in
 
 Board of Educ., East Williston
 
 and
 
 Board of Educ., City of New York (supra)
 
 has been reached under the auspices of the Taylor Law, it may then be struck down only on proof that the policy is
 
 “
 
 patently and palpably discriminatory ”. Appellants also raise two procedural issues which warrant our attention.
 

 The argument in sum is that contract' provisions reached under Taylor Law procedures are entitled to a special status recognition under our decision in
 
 Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington
 
 v.
 
 Associated Teachers of Huntington
 
 (30 N Y 2d 122). We recently noted that the language of our opinion in that case might be read too broadly and •that “ [o]ne should construe the language in [that case] to mean that collective bargaining under the Taylor Law * * * has broad scope with respect to the terms and conditions of employment, limited by plain and clear, rather than express, prohibitions in the statute or decisional law
 
 ” (Syracuse Teachers Assn
 
 . v.
 
 Board of Educ., Syracuse City School Dist.,
 
 35 N Y 2d 743).
 

 We now hold that personnel policies and practices are no less subject to the constraints of the Human Eights Law because they are the product of negotiations conducted under the Taylor Law. (Cf.
 
 Camillus Cent. School Dist.
 
 v.
 
 State Div. of Human Rights,
 
 44 A D 2d 774;
 
 Matter of Union Free School No. 6, Town
 
 
 *379
 

 of Babylon
 
 v.
 
 New York State Div. of Human
 
 Rights, 43 A D 2d 31.)
 

 In so holding we adopt the relevant portions of the opinion of Mr. Justice Hopkins in
 
 Matter of Union Free School Dist. No. 6, Town of Babylon
 
 (43 A D 2d 31, 34—36,
 
 supra),
 
 noting in passing that no claim of waiver or estoppel is here advanced or therefore reached.
 
 [3]
 

 We also reject appellant’s procedural contention that the Division of Human Eights lacked jurisdiction here by reason of the complainant’s failure to comply with the notice-of-claim provisions of subdivision 1 of section 3813 of the Education Law:
 
 “
 
 1. No action or special proceeding, for any cause whatever, except as hereinafter provided, relating to district property or claim against' the district, or involving its rights or interests shall be prosecuted or maintained against any school district, board of education, board of cooperative educational services or any officer of a school district, board of education, or board of cooperative educational services, unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.” It appears that not all actions and special proceedings have been held to be subject to the prerequisites of subdivision 1 of section 3813.
 
 [4]
 
 The pertinent distinction is between actions and pro
 
 *380
 
 ceedings which on the one hand seek only enforcement of private rights and duties and those on the other in which it is sought to vindicate a public interest; the provisions of subdivision 1 of section 3813 are applicable as to the former but not as to the latter. This distinction has been recognized by our court in other settings
 
 (Matter of New York State Labor Relations Bd.
 
 v.
 
 Holland Laundry,
 
 294 N. Y. 480, 495;
 
 Matter of Board of Educ. of Syracuse City School Dist.
 
 v.
 
 State Div. of Human Rights,
 
 38 A D 2d 245, 248, affd. 33 N Y 2d 946,
 
 supra).
 
 It is true, of course, that this proceeding was triggered by the complaint of this one teacher and that the relief granted below will redound to the benefit of that teacher as well as to the benefit of other teachers similarly situated. Such circumstances cannot be allowed, however, to obscure the fact that advantages which accrue to these teachers stem not from their rights of contract or other individual entitlement but rather flow as an appropriate and intended consequence of the vindication by the division, acting on behalf of the public, of the public’s interest in the elimination of discrimination based on sex — a public interest duly declared by legislative enactment.
 

 We note additionally and in any event that the procedures under the Human Rights Law afford the school district notice and opportunity for adjustment and settlement of the issues here in dispute not unlike those to which the board would have been entitled under subdivision 1 of section 3818.
 

 Finally, we see no sufficient ground in legislative history or otherwise to differ with the conclusion reached in each of the four departments of the Appellate Division that the time schedules specified in section 297 (subd. 2; subd. 4, pars, a, c) of the Executive Law for the performance of certain acts on the part of the Division of Human Rights are directory only.
 
 (Metropolitan Life Ins. Co.
 
 v.
 
 State Div. of Human Rights,
 
 37 A D 2d 761 [1st Dept.];
 
 Matter of Glen Cove Municipal Civ. Serv. Comm.
 
 v.
 
 Glen Cove Nat. Assn. for Advancement of Colored People,
 
 34 A D 2d 956 [2d Dept.];
 
 Matter of 121-129 Broadway Realty
 
 v.
 
 New York State Div. of Human Rights,
 
 43 A D 2d 754 [3d Dept.];
 
 Matter of
 
 Moskal v.
 
 State Div. of Human Rights,
 
 36 A D 2d 46 [4th Dept.]; cf.
 
 State Div. of Human Rights
 
 v.
 
 Rinas,
 
 42 A D 2d 388.) The time limits are evidently for the
 
 *381
 
 benefit of complainants and others benefited and cannot be held to shelter those charged with violation of the statute. Absent some showing of substantial prejudice, noncompliance with such schedules does not operate to oust the division of the jurisdiction conferred on it by the Human Rights Law. We find no predicate for any such ouster in this record.
 

 Accordingly, there being substantial evidence to support the determination of the commissioner that the school district’s action constituted discrimination based on sex, the order of the Appellate Division should be affirmed.
 

 Chief Judge Bbeitel and Judges Jasen, Gabbielli, Wachtleb, Rabin and Stevens concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Two Federal district courts have read the opinion in
 
 Aiello
 
 as holding that a classification excluding pregnancy and childbirth is not sex-based —
 
 Communications Workers of Amer., AFL-CIO
 
 v.
 
 American Tel. & Tel. Co.
 
 (379 F. Supp. 679, an action under title VII of the Civil Rights Act, involving, .as here, a question of a statutorily proscribed discrimination); and
 
 Seamen
 
 v.
 
 Spring Lake Park Independent School Dist.
 
 (387 F. Supp. 1168, an action under U. S. Code, tit. 42, § 1983, involving a question of deprivation of constitutional rights rather than a question of statutorily prohibited discrimination, thus the same issue as in
 
 Aiello).
 
 We do not read
 
 Aiello
 
 as do these district courts. In any event, were the Supreme Court to declare that exclusion of pregnancy and maternity benefits was to no extent based on sex, we would not be obliged to accept such determination for the purposes of the application of our State’s Human Rights Law.
 

 [2]
 

 . The rationale of
 
 Board of Educ., East Williston (supra)
 
 permits of no legal distinction for purposes of application of the Human Rights Law between policies with respect to pregnancy and policies with respect to childbirth, and no contention is made to the contrary.
 

 [3]
 

 . While principles of waiver or estoppel might foreclose relief to an individual complainant in a particular instance, it would seem that action taken by or on behalf of an individual complainant could never operate to foreclose action bj the division.
 

 [4]
 

 . E.g.,
 
 Ruocco
 
 v.
 
 Doyle
 
 (38 A D 2d 132, action by school principal seeking declaration of his tenured status);
 
 Matter of Di Sano
 
 v.
 
 Storandt
 
 (43 Misc 2d 272, revd. on other grounds 22 A D 2d 6, action to restrain school district from effectuating plans for open enrollment);
 
 Newburgh Nursery
 
 v.
 
 Board of Educ.
 
 (41 Misc 2d 997, action to foreclose mechanic’s lien);
 
 Levert
 
 v.
 
 Central School Dist., Huntington
 
 (24 Misc 2d 832, taxpayer action seeking declaration that central school district violated its statutory duty following centralization to maintain schools up to and including sixth elementary grade);
 
 Matter of Randall
 
 v.
 
 Hoff
 
 (4 Misc 2d 376, taxpayer’s action for change in plans for construction of a new high school).