OPINION OF THE COURT
Alfred M. Ascione, J.
Article 78 proceeding for a judgment directing respondent to reinstate petitioner to her position as supervising attorney for the Mental Health Information Service (MHIS), First Judicial Department, effective January 30, 1978, to continue petitioner in unpaid maternity leave status through June 30, 1978, and to award her with both pay from June 30, 1978 to the date of her reinstatement and other benefits of her position to which petitioner is entitled, is granted to the extent hereinafter indicated.
It sufficiently appears to this court that petitioner, who was on unpaid maternity leave, from August 4, 1977 to January 30, 1978, should have been granted the extension of unpaid maternity leave she requested on January 4, 1978, but not for the additional period until June 30, 1978, but instead until May 23, 1978. Respondent’s failure to grant the extension to the extent indicated, was arbitrary and capricious, and violative of the law.
The over-all purpose of MHIS, a State agency, under the jurisdiction of each department of the Supreme Court, is to protect and safeguard the rights of all mentally disabled or allegedly mentally disabled patients and subject to the provisions of the Mental Hygiene Law. (See Mental Hygiene Law, § 29.09, subd [b].)
Subdivision (a) of section 29.09 provides as follows: "The mental health information service of the state in each judicial department of the supreme court is continued. The head of such service in each judicial department and such assistants and such staff as may be necessary shall be appointed and may be removed by the presiding justice of the appellate division of the judicial department. Appointments and transfers to the service shall comply with the provisions of the civil service law and, except for the head of the service in each judicial department, all such positions shall be in the competitive class of the civil service. Standards for qualifications of the personnel in the service having duties requiring direct *839 contact with patients and their immediate families shall be established in agreement with the commissioner.”
Petitioner received a provisional appointment, effective September 16, 1968, in the competitive class of the classified civil service of the State of New York in the position of attorney for the MHIS. Thereafter, she received a provisional appointment as a senior attorney of MHIS and, in 1975, petitioner was promoted to the provisional position of supervising attorney, holding that position until the date of her termination on January 30, 1978.
The position of supervising attorney is the only one of its kind in the MHIS, First Department. It is the highest position in the agency below the director and deputy director. The person occupying the position is responsible for the supervision of at least eight professionals and two secretaries, and for the operation of two field offices.
Petitioner gave birth to her daughter on January 28, 1977. She did not request an unpaid maternity leave until July 24, 1977. Instead, with the approval of the director of her agency, she was on paid accrued sick leave until May 23, 1977 and thereafter on paid accrued annual leave until August 3, 1977. She was advised by the deputy director by letter dated July 20, 1977 that "your period of paid leave will terminate on August 3, 1977. In order to secure your position beyond that date, it will be necessary for you to submit a written request for additional unpaid child-bearing leave. Please submit your request no later than July 26, 1977.”
Petitioner responded by letter dated July 24, 1977, in which she disputed the date when her paid leave terminated because of compensatory time she claimed for work done by her at home after her daughter’s birth, concluding: "with respect to unpaid leave after August 17th [the date she claimed her paid leave terminated], I have decided, at present, to accept your offer of maternity leave until the end of January, 1978.”
By letter dated July 27, 1977, the director advised petitioner that her request for compensatory time for work at home had been previously denied and that her paid leave status would terminate on August 3, 1977. "Thereafter, you will be granted unpaid maternity leave until Monday, January 30,1978”.
Significantly, at no time did petitioner regard her status between January 28, 1977 and August 3, 1977, as being on maternity leave. More significantly, neither did the director, deputy director, nor respondent. The correspondence clearly *840 shows that petitioner was considered to be on medical disability paid sick leave until May 23, 1977 and then on paid accrued annual leave until August 3, 1977, with the authorization and approval of the Director of MHIS.
Further, no formal request was made of petitioner that she apply for maternity leave until the letter of July 20, 1977, though respondent claims that oral requests were made of petitioner to do so. Thus, it was not until August 4, 1977, after all her paid leave time expired that petitioner was placed on authorized unpaid maternity leave.
According to a letter dated June 16, 1977 from the Office of Court Administration (OCA) to the Director of MHIS, in response to the director’s letter seeking guidance on the question of the use of maternity leave by MHIS employees, OCA’s counsel had advised "that the time and leave provisions of the rules of the Administrative Board of Judicial Conference apply to employees of the Mental Health Information Service of the First Judicial Department. Section 24.8 of the rules which is relevant to the questions you raise provide in part: 'Leaves without pay may be granted by the Administrative Judge for a maternity leave not to exceed 18 months. It shall be mandatory to grant the first 12 months leave.’ ”
Respondent has interpreted this rule as not prohibiting the payment of salary during the period of leave, based upon the use of approved leave credits, either of accrued sick leave or annual leave credits. Where this court disagrees with respondent is his interpretation that, upon the exhaustion of such leave credits, the employee may continue on unpaid maternity leave but only for the balance of the mandatory 12-month period, which here was said to commence on the date of birth of petitioner’s child.
Such an interpretation conflicts with the thrust of recent decisions under the State’s Human Rights Law (Executive Law, art 15), "that a personnel policy which singles out pregnancy, among all other physical conditions to which a teacher may be subject, as a category for special treatment in determining when leave from duty shall begin is prohibited by the proscriptions of our State’s Human Rights Law” (Union Free School Dist. No. 6 of Towns of Islip & Smithtown v New York State Human Rights Appeal Bd., 35 NY2d 371, 375; Board of Educ. v New York State Div. of Human Rights, 35 NY2d 673, affg 42 AD2d 49) and "that the Human Rights Law *841 requires that a pregnant teacher who takes a pregnancy-related leave must be permitted to take advantage of her sick and sabbatical leave entitlements to the same extent as would be the case were she suffering from some other temporary physical disability” (Union Free School Dist. No. 6, supra, p 376; Matter of Board of Educ. v State Div. of Human Rights, 35 NY2d 675, affg 42 AD2d 854).
Those cases dealt with personnel regulations of school boards or districts mandating when a teacher must commence unpaid maternity leave, or until what time a teacher must continue on unpaid maternity leave after the birth of her child, regardless of her physical ability to teach before or after the birth. Such personnel regulations were found to be prohibited by the Human Rights Law as discrimination based upon sex. The Court of Appeals sustained directions requiring the school boards or districts to pay the teachers for such periods of time when they were physically able to work, subject to medical proof of such ability.
It does not appear that the Court of Appeals has yet been called upon to determine the precise issue presented herein: Whether an employee can first use sick leave and annual leave credits before requesting an unpaid maternity leave, though a recent Appellate Division, Fourth Department, case has reached the question. In State Div. of Human Rights v Board of Educ. (54 AD2d 1115), the Human Rights Appeal Board affirmed an order of the division which, inter alia, directed the respondent therein to "permit pregnant teachers to use accrued sick leave benefits for those days during their unpaid maternity leave in which they were unable to work for physical reasons.” In a proceeding to enforce the directives, the court modified the above directive, as relevant hereto, to provide (p 1116): "Said respondent shall pay any teacher physically disabled by reason of maternity accrued sick leave for that portion of the school year coinciding with such disability, provided she does not commence said sick leave until actually disabled”.
The court said that "when a teacher continues teaching until she is no longer physically capable of continuing, and an attending physician so certifies, she may then collect accrued sick pay for her disability. The total period of actual disability must also be confirmed by the attending physician. Thereafter, the teacher’s election to take an unpaid maternity leave should have no retrospective bearing on her prior leave due to *842 physical disability.” (State Div. of Human Rights v Board of Educ., supra, p 1115.)
Thus, on the facts of this case, where the payment of accrued sick leave was authorized and paid until May 23, 1977, respondent thereby certifying petitioner’s physical disability, the mandatory unpaid maternity leave of one year provided for in 22 NYCRR 24.8 (a) did not commence until May 24, 1977 and did not terminate until May 23, 1978.
Though respondent also authorized the payment of petitioner’s accrued annual leave credits from May 24, .1977 to August 3, 1977, this court holds that such authorization and payment appears to be entirely discretionary with respondent and may not form the basis for extending the time before which the mandatory unpaid maternity leave commences, whereas, under the cases cited, the payment of accrued sick leave credits is required.
After being granted unpaid maternity leave effective August 4, 1977 until January 30, 1978, on January 4, 1978, petitioner wrote to the Director of MHIS requesting an extension of her leave until June 30, 1978. She stated that: "I had hoped to be able to return to work by the end of January, but I now find this to be a little too early to leave my daughter in the care of a stranger. However, I have made arrangements for her to be cared for by a member of my family starting in July, and am, therefore, requesting that my leave be continued until then.”
She concluded her letter with: "I hope that you will act favorably on my request (or perhaps suggest a possible compromise) since I would like to resume employment with the Mental Health Information Service where I feel I can contribute to the work of the agency.”
By letter dated January 13, 1978, the director advised that no further leave time would be extended. "As of January 30, 1978 you will have been on leave from your position for twelve months. If you decide to return to work, please report to my office at 41 Madison Avenue on January 30, 1978; if you decide not to return, I should appreciate it if you would send me a letter of resignation prior to that date. If you do neither it will be considered that you have resigned.”
Thereafter, on January 30, 1978, the director advised OCA that petitioner’s leave time had expired and that, "Her employment is terminated as of January 30, 1978.”
On February 8, 1978, petitioner wrote to the Presiding *843 Justice of the Appellate Division, First Department, requesting a review of the decision denying her request for an extension of maternity leave. By letter dated March 8, 1978, the Clerk of the Court, after reciting the facts and the provisions of section 24.8 (a) of the rules and respondent’s interpretation thereof, advised that he is informed of the "long-standing” policy of MHIS against leaves of more than one year and, "in the absence of the most compelling reasons, we would be disinclined to interfere with personnel policy decisions of the Director, who must bear the responsibility for the proper day-to-day operation of that service.” The clerk advised that petitioner’s request for an extension of maternity leave was denied.
As is apparent, petitioner’s provisional status was never mentioned, either by the agency director or by the Clerk of the Appellate Division responding to petitioner’s request for review. This may be due to the fact that even a permanent employee may be deemed to have resigned if absent without leave for 10 days after the expiration of a leave of absence. (See 22 NYCRR 25.30 [d].)
Nevertheless, on the facts of this case, it is surprising to note that respondent has asserted as defenses to this proceeding that petitioner, a provisional employee, in a competitive class position, was subject to removal at will; that because a provisional appointment, even though held in violation of law, may not ripen into permanent employment, petitioner has failed to state a claim for reinstatement upon which relief may be granted; that because petitioner does not have a valid claim for reinstatement, petitioner’s request for continuation in an unpaid maternity leave status through June 30, 1978 is rendered moot; and that petitioner, a provisional employee, had no legal entitlement to a mandatory leave of absence for maternity.
The conclusion is inescapable that these defenses are asserted because, on the merits of petitioner’s claim, she is entitled to the relief requested, to the extent indicated. It is abhorrent to this court that respondent should find it necessary to assert these defenses to defeat petitioner’s claim.
The employee was discharged for only one reason: She knew her rights as a new mother under the law and asserted them, to the obvious displeasure of her director. After nine years of concededly conscientious and outstanding service to her agency she deserved better treatment. This is not a case *844 where the fiscal crunch mandates the reduction of staff or where the employee is demonstrably unfit. This is a new mother who needs time before she is willing to leave her infant on a daily basis. That is the purpose of the rule which grants an unpaid maternity leave of 18 months, the first year of which is mandatory and which the cases as cited above say commences after sick leave expires.
The MHIS Director was in doubt about the maternity leave rule and sought guidance. He was advised by OCA that MHIS employees, which include the petitioner, were within the rule (see 22 NYCRR 24.1). Thereafter, the director did not advise petitioner that her unpaid maternity leave began on January 28, 1977 but rather he advised her that it began on August 4, 1977. Nor did he tell her that there would be no further extensions after January 30, 1978. In this court’s opinion this was discrimination based on sex and should not be permitted. It is clear that petitioner was terminated because she insisted on the full unpaid maternity leave of 12 months, to which she was entitled.
Under these circumstances, notwithstanding petitioner’s provisional status of nine years’ duration in several job titles, the last from July 1975, and which was clearly in violation of law (see 22 NYCRR 25.26; Civil Service Law, § 65, which limit provisional employment to nine months) this court holds that the mandatory 12-month unpaid maternity leave rule applies to petitioner and that it commenced on May 24, 1977, after her sick leave expired, and terminated one year later on May 23, 1978. To hold otherwise would be to turn the clock back.
Since petitioner, in her letter dated January 4, 1978, expressed the willingness to compromise the length of the extension she requested, this court finds that she would have been willing to return to work on May 24, 1978 and, accordingly, she is entitled to back pay and all benefits from that date until her reinstatement to her former position, which is hereby directed.