█ SHOE BOX OF KINGS HIGHWAY, INC., Appellant, v MITCHELL FISCH-ERMAN, Individually and Doing Business as THE SHOE BOX, et al., Respondents.—Order of the Supreme Court, Nassau County, dated November 24, 1978, affirmed, with $50 costs and disbursements, on the opinion of Mr. Justice Derounian at Special Term. Titone, J. P., O'Connor, Margett and Martuscello, JJ., concur.

█ UNITED TEACHERS OF SEAFORD, Petitioner, v NEW YORK STATE HUMAN RIGHTS APPEAL BOARD, et al., Respondents.—Proceeding pursuant to section 298 of the Executive Law to review an order of the State Human Rights Appeal Board, dated August 7, 1978, which affirmed an order of the State Division of Human Rights, dated December 3, 1976, which, after a hearing, held, *inter alia,* that the Board of Education of the Seaford Union Free School District and the United Teachers of Seaford had discriminated against six female athletic coaches. The State division has cross-applied, *inter alia,* for enforcement of the order. Cross application granted, order confirmed and proceeding dismissed, without costs or disbursements. The courts have consistently held that the time limits embodied in sections 297 and 297-a of the Executive Law are directory and not mandatory *(Union Free School Dist. No. 6 of Towns of Islip & Smithtown v New York State Human Rights Appeal Bd.,* 35 NY2d 371; *State Div. of Human Rights v New York State Dept. of Correctional Servs.,* 61 AD2d 25). The August, 1977 amendment of those statutes has not changed this interpretation (see Memorandum of the State Executive Department, McKinney's 1977 Session Laws of New York, p 2419). Therefore, the State division is not divested of its jurisdiction because of its failure to comply with the time limits. As to the merits, the determinations of the State Division of Human Rights and the appeal board are supported by substantial evidence. It is clear that the union was aware that the salaries for female athletic coaches were unduly low. Indeed, the union initially proposed a salary which was twice what the women eventually received. When all other issues were resolved and the protection of these women's rights became burdensome, the union simply abandoned the earlier proposal and settled for an agreement that grossly discriminated against the female coaches. It is settled that a union has the obligation to represent its members fairly and impartially and may not discriminate on the basis of race or sex *(Matter of Union Free School Dist. No. 6, Town of Babylon & Town of Oyster Bay v New York State Div. of Human Rights,* 43 AD2d 31, app dsmd 33 NY2d 975). The fundamental purpose of a union is to provide for its members the bargaining power that unity creates. When a union fails to exercise that power in the bargaining process and permits an employer to discriminate against union members, it discriminates against them as surely as if it proposed the inequitable agreement. Titone, J. P., O'Connor, Martuscello and Mangano, JJ., concur.