**David J. GALLO, Plaintiff,**

v.

**SUFFOLK COUNTY POLICE DEPARTMENT, County of Suffolk, and John Doe, an individual whose identity is unknown but who is believed to be a Suffolk County Police Officer, Defendants.**

No. 02–CV–2615(SJF)(WDW).

United States District Court, E.D. New York.

March 17, 2005.

Patricia A. Dempsey, Ciarelli & Dempsey, Riverhead, NY, for Plaintiff.

Colleen Fondulis, Suffolk County Attorney's Office, Lead Attorney, Hauppauge, NY, for Defendant.

## OPINION & ORDER

FEUERSTEIN, District Judge.

### I. Introduction

Plaintiff David Gallo ("plaintiff" or "Gallo") commenced this action against defendants Suffolk County Police Department ("SCPD"),[1] County of Suffolk ("Suffolk County"), and an unidentified police officer (collectively, "defendants"), alleging violation of his Fourteenth Amendment right to equal protection based on defendants' failure to process his application for a position as a police officer. Plaintiff further asserts claims under the New York Civil Service Law and New York common law.

### II. Background [2]

In May 1996, plaintiff applied to become a police officer and achieved a score of 98 on the Suffolk County civil service examination. (Defs.' 56.1 Statement ¶ 6–7).

Based upon his residency within the Town of Riverhead ("Town"), plaintiff was placed on the police officer eligibility list for both the Town and Suffolk County. (Pl.'s 56.1 Statement ¶ 6). Plaintiff passed the physical and psychological performance tests and was interviewed by Sergeant Allen Frawley ("Sergeant Frawley") of the SCPD's Applicant Investigations Section on August 27, 1997. (Id. ¶ 7–8). According to plaintiff, he was notified during his interview that his steroid use within the prior two (2) years disqualified him from employment. (Id. ¶ 8–9). Consequently, plaintiff signed a declination letter dated August 27, 1997, which removed him from the list of eligible candidates. (Defs.' 56.1 Statement ¶ 8–9).

In May 1999, plaintiff achieved a score of 87.5 on the Suffolk County civil service examination. (Id. ¶ 11). He was again placed on the police officer eligibility list

---

1. Since the SCPD is an administrative arm of Suffolk County, (Laws of Suffolk County, pt. II, art. XIII (2004)), it is not an independent entity amenable to suit. See Davis v. Lynbrook Police Dep't, 224 F.Supp.2d 463, 477 (E.D.N.Y.2002) ("[D]epartments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality...."). Accordingly, plaintiff's claims against the SCPD are dismissed.

2. Defendants contend that plaintiff's statement of facts fails to comply with Local Rule 56.1, and thus the facts set forth in defendants' statement should be deemed admitted as a matter of law. Local Rule 56.1 provides in pertinent part:

> (b) The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.

> (c) Each numbered paragraph in the statement of material facts required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

Local Civ. R. 56.1(b)-(c).

Plaintiff's Rule 56.1 statement merely provides his own recitation of the facts and fails to specifically controvert the material facts set forth in defendants' statement. Accordingly, pursuant to Local Civil Rule 56.1(c), the facts set forth in defendants' Rule 56.1 statement are deemed admitted. See Folkes v. New York College of Osteopathic Medicine of New York Inst. of Tech., 214 F.Supp.2d 273, 281 (E.D.N.Y.2002) (defendants' statements of material facts deemed admitted where plaintiff failed to controvert material facts set forth in therein); Elgamil v. Syracuse Univ., No. 99–611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug.21, 2000) (defendant's Rule 56.1 statement deemed admitted where plaintiff failed to comply with Northern District Local Rule 7.1(a)(3), similar to Eastern District Local Rule 56.1(c), by submitting a counter-statement that did not admit or deny specific assertions).

and passed the physical and psychological performance tests for a second time. (Pl.'s 56.1 Statement ¶ 9, 14). On or about October 2, 2000, plaintiff was again interviewed by Sergeant Frawley. (Defs.' 56.1 Statement ¶ 12). Upon completion of the interview, Sergeant Frawley fingerprinted plaintiff and accepted plaintiff's fifty dollar ($50.00) processing fee in connection with the investigative process. (Pl.'s 56.1 Statement ¶ 15).

In the spring of 2001, plaintiff learned that the Town of Riverhead had appointed police officer candidates from the eligibility list who had scores equal to his score of 87.5. (*Id.* ¶ 16). In May 2001, plaintiff inquired about his status on the eligibility list. (*Id.* ¶ 17; Defs.' 56.1 Statement ¶ 14). By letter dated June 11, 2001, Civil Service Chief of Examinations Allen Hartvik ("Hartvik") informed plaintiff that he had not been appointed by the Town of Riverhead because he had signed a declination letter on October 2, 2000 that removed him from consideration as a Town of Riverhead police officer. (Pl.'s 56.1 Statement exh. I; Defs.' 56.1 Statement ¶ 15). Hartvik also notified plaintiff that he remained eligible for consideration by the SCPD if and when his score of 87.5 became reachable for a position within that police force. (Pl.'s 56.1 Statement exh. I; Defs.' 56.1 Statement ¶ 16–17). Plaintiff then advised Hartvik that he had never signed a declination letter on October 2, 2000. (Pl.'s 56.1 Statement ¶ 19; Defs.' 56.1 Statement ¶ 13).

Hartvik faxed copies of the August 27, 1997 and October 2, 2000 declination letters to Sergeant Thaddeus Nieves ("Nieves") of the SCPD's Applicant Investigation Section. (Pl.'s 56.1 Statement ¶ 22). In a memorandum dated June 25, 2001 to SCPD Chief of Support Services Edward Webber, Nieves concluded that a copy of the October 2, 2000 letter "appears to be a copy of [the August 27, 1997 letter], with the time stamp and notation covered up, and the date changed. The signatures and initials on this form are identical to the [copy] from 1997." (*Id.* exh. N).

By letter dated October 24, 2001, Civil Service notified plaintiff that it had annulled the forged waiver of appointment and restored his eligibility status. (*Id.* exh. O). However, plaintiff was further informed that "[g]iven the time that has elapsed since you passed the qualifying medical, agility and psychological tests, update examinations may be required when your name again comes under consideration for appointment." (*Id.*).

In early 2002, the SCPD applied to Civil Service for a declaration that plaintiff was disqualified from the eligibility list pursuant to Civil Service Law §§ 50 and 58. (Defs.' 56.1 Statement ¶ 21). Specifically, the SCPD challenged plaintiff's qualifications based upon his admissions of (1) steroid use in 1991 and 1996 and (2) failure to report approximately one-thousand one-hundred dollars ($1,100) derived from an "off the books" car cleaning business in 2000. (*Id.*). In March 2002, Brian Cassidy, the Suffolk County police officer responsible for pursuing the section 50 proceeding, advised the Town of Riverhead that plaintiff was not eligible for appointment due to the pending administrative litigation seeking to have him disqualified. (Pl.'s 56.1 Statement exh. WW at 20, 25, 29, 34). On April 22, 2002, Civil Service determined that the facts did not support plaintiff's disqualification as a candidate for police officer. (Defs.' 56.1 Statement ¶ 24). On or about April 22, 2000, the Town of Riverhead appointed three candidates as police officers, all of whom were ranked lower than plaintiff on the eligibility list. (*Id.* ¶ 26; Pl.'s 56.1 Statement ¶ 48).

Plaintiff commenced the instant action on May 1, 2002. (Compl.). The parties entered into a stipulation in which the Town of Riverhead, in exchange for the discontinuance of the action against it, agreed to consider plaintiff for appointment as a police officer subject to a background check and polygraph examination to be completed by Suffolk County. (Pl.'s 56.1 Statement exh. Z). Suffolk County represented that "the background check and polygraph will be completed in approximately six (6) weeks." (Id.). In June 2002, plaintiff was advised that he had to undergo medical and psychological examinations because his past results were deemed "stale." (Id. ¶ 69–70; Defs.' 56.1 Statement ¶ 39). Plaintiff passed the physical performance and medical tests, but on July 19, 2002, following a fifteen (15) minute interview, the examining psychologist indicated that she disagreed with the conclusions of the two prior examining psychologists and would have found plaintiff "not qualified" based on his steroid use in 1991 and 1996. (Pl.'s 56.1 Statement ¶ 71). On August 10, 2002, plaintiff received a notification, dated August 2, 2002, apprising him that he was deemed "not qualified" by the third psychologist. (Id. ¶ 72; Defs.' 56.1 Statement ¶ 42).

On September 12, 2002, plaintiff was interviewed by Suffolk County's Appeal Committee, which approved plaintiff's earlier request to submit an independent psychological evaluation as rebuttal evidence. (Defs.' 56.1 Statement ¶ 44, 46). By letter dated September 26, 2002, plaintiff submitted a report by Benjamin Hirsch, Ph.D. ("Hirsch"), which strongly recommended plaintiff's appointment as a police officer. (Pl.'s Statement ¶ 74). On or about October 3, 2002, the Appeal Committee rejected plaintiff's appeal and deemed him "not qualified" for the police officer position. (Defs.' 56.1 Statement ¶ 47–48). According to plaintiff, despite the Appeal Committee's assurances of an opportunity to submit rebuttal evidence, the rejection of his appeal was made before the submission of Hirsch's report, as demonstrated by the alteration of the date from "9/12/02 to 10/03/02" on the notice of decision. (Pl.'s Statement ¶ 75; id. exh. KK).

### III. Standard of Review

Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material "if it might affect the outcome of the suit under the governing law." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir.2001). An issue of fact is genuine only if a jury could reasonably find in favor of the nonmoving party based on that fact. *Id.* The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The trial court is required to construe the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. *Id.* at 252, 106 S.Ct. 2505; *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir.1996).

### IV. Analysis

#### A. 42 U.S.C. § 1983 Claim

Violations of federal statutory and constitutional rights by state actors are actionable through 42 U.S.C. § 1983. *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2502, 65 L.Ed.2d 555 (1980).

To survive a summary judgment motion on a § 1983 claim, a plaintiff must demonstrate that: (1) the defendant was acting "under color of state law" at the time of the improper conduct and (2) that the conduct deprived the plaintiff of " 'rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Greenwich Citizens Comm., Inc. v. Counties of Warren & Washington Indus. Dev. Agency*, 77 F.3d 26, 29–30 (2d Cir.1996) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

### 1. Municipal Liability

▆ The doctrine of *respondeat superior* is an insufficient basis for municipal liability under § 1983. *Monell v. Dep't of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, a plaintiff must demonstrate that the constitutional violation by a municipal employee resulted from a municipal custom or policy. *Id.* at 694, 98 S.Ct. 2018. A municipal custom or policy can be shown by establishing that an official who is a final policymaker directly committed or commanded the violation of the plaintiff's federal rights or indirectly caused the misconduct of a subordinate municipal employee. *Board of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 405–07, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000).

▆ An inference of a municipal custom or policy "may ... be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that its agents were violating citizens' constitutional rights." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir.1998); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("[M]unicipal inaction such as the persistent failure to discipline subordinates who violated civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*.").

▆ Plaintiff contends that Suffolk County failed to discipline or properly supervise the individual responsible for the forgery of the October 2, 2000 declination letter and "sanctioned the offending practice with a 'deliberate indifference' to the impact [that] this activity would have on the individual's rights and the integrity of the system." (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 8–9). In a failure to train or supervise context, deliberate indifference is established where: (1) "a policymaker knows 'to a moral certainty' that [his] employees will confront a given situation;" (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision makes less difficult or that there is a history of employees mishandling the situation;" and (3) "the wrong choice ... will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir.1992), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). Although plaintiff claims that Suffolk County did not have proper procedures in place to guarantee the authenticity of declination letters, he cannot satisfy the second prong of the aforementioned *Walker* test. Whether to forge declination letters does not qualify as a difficult choice since nothing more than the application of common sense and ethics is required. *See id.* ("Whether to use deadly force in apprehending a fleeing suspect qualifies as a 'difficult choice' because more than the application of common sense

is required."). Thus, Suffolk County cannot be faulted for failing to put procedures in place to detect forged declination letters. Moreover, there is no evidence of a history of Suffolk County employees mishandling the preservation of authentic declination letters. Accordingly, plaintiff cannot establish that Suffolk County's failure to train or supervise amounted to deliberate indifference to his rights.

Plaintiff further claims that Suffolk County had a custom or policy that caused the violation of his constitutional rights because it was aware of the forgery yet failed to conduct a meaningful investigation into that matter. (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. at 9). Drawing all reasonable inferences in plaintiff's favor, I find that a jury could rationally conclude that Suffolk County failed to conduct a meaningful investigation into plaintiff's repeated charges of constitutional violations. Upon receiving plaintiff's correspondence questioning the validity of the October 2000 declination letter, the Applicant Investigation Section promptly concluded in June 2001 that the document was a forgery. (Pl.'s 56.1 Statement exh. N). However, since the waiver of appointment was not annulled until October 2001, (id. exh. O), by which date plaintiff's qualifying examination results were deemed stale, the investigation was essentially meaningless.

Additionally, at an appearance before District Judge Arthur D. Spatt on May 3, 2002, the Suffolk County Attorney's Office represented that a background check and polygraph examination were the only steps required to complete the processing of plaintiff's appointment. (Id. exh. Z). Plaintiff was subsequently contacted by Suffolk County for the scheduling of, inter alia, a psychological examination, to which he objected in a letter to the Suffolk County Attorney's Office. (Id. exh. AA).

Nevertheless, and despite plaintiff's pending federal complaint alleging violations of equal protection, Suffolk County compelled him to submit to a third psychological examination, which he failed. (Id. ¶ 72; Defs.' 56.1 Statement ¶ 42).

Finally, and again regardless of plaintiff's pending equal protection complaint, the Appeals Committee may have failed to properly consider his submission on appeal by finding him "unqualified" prior to receiving his independent psychological report. (Pl.'s Statement exh. KK). If established, such conduct would qualify as a deficient investigation. In sum, viewing the evidence in a light most favorable to plaintiff, a genuine issue of material fact exists as to whether there was a "meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir.1995).

### 2. Equal Protection

The Fourteenth Amendment of the United States Constitution guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Plaintiff alleges that he was selectively treated in that other candidates, who were ranked lower on the eligibility list, were appointed as police officers.

A plaintiff may establish an equal protection claim on two different selective treatment theories. *Gillum v. Nassau Downs Regional Off Track Betting Corp. of Nassau*, 357 F.Supp.2d 564, 571 (E.D.N.Y.2005). First, a plaintiff's equal protection rights are violated where government intentionally treated him or

her differently from others similarly situated because of personal animus. *Id.; see also LeClair v. Saunders,* 627 F.2d 606, 609–10 (2d Cir.1980). Second, a claim of selective treatment may be established where a similarly situated individual was treated differently by a state official who acted in an arbitrary manner and without rational basis. *Gillum,* 357 F.Supp.2d 564, 571 (citing *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)). Here, plaintiff alleges that defendants intentionally treated him differently from other police officer applicants because of a malicious intent to injure him.

■ As the Second Circuit has noted, "cases predicating constitutional violations on selective treatment motivated by ill-will, rather than by protected-class status or an intent to inhibit the exercise of constitutional rights, are 'lodged in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply.'" *Bizzarro v. Miranda,* 394 F.3d 82, 86 (2d Cir.2005) (quoting *LeClair,* 627 F.2d at 608). To establish a violation of equal protection based upon this theory, plaintiff must show that: (1) he was selectively treated compared with others similarly situated, and (2) the selective treatment was based upon impermissible considerations, such as membership in a suspect class, intent to inhibit or punish the exercise of a constitutional right, or malicious or bad faith intent to injure. *Giordano v. City of New York,* 274 F.3d 740, 750–51 (2d Cir. 2001); *Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 16 (2d Cir.1999); *LaTrieste Rest. & Cabaret v. Vill. of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994).

### a. Similarly Situated

To establish selective treatment, a plaintiff must prove that he or she was similarly situated to other people but nevertheless treated differently. *Penlyn Dev. Corp. v. Incorporated Vill. of Lloyd Harbor,* 51 F.Supp.2d 255, 264 (E.D.N.Y.1999). "To be similarly situated, the persons at issue need not be identical, but must be similar in all material respects." *Holmes v. Gaynor,* 313 F.Supp.2d 345, 355 (S.D.N.Y.2004) (internal quotations and citations omitted). "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent. Exact correlation is neither likely nor necessary, but the cases must be fair congeners." *Penlyn Dev. Corp.,* 51 F.Supp.2d at 264.

■ From the record, it is unclear whether similarly situated applicants were disqualified. Plaintiff's first set of interrogatories requested that defendants "[i]dentify all Police Officer candidates who were found disqualified for steroid use during the period from 1996 through 2002, and whether each disqualification was [e]ffected by Declination Letter, Section 50–58 application, or psychological examination." (Pl.'s Statement exh. RR at 11). Defendants responded that the request was "overly broad and unduly burdensome. Each application is processed on an individual case basis. The records cannot be tracked and would require a manual search of all applicant files from 1996–2002." (*Id.* at 12). While a request for the identification of those candidates disqualified for drug use might, if made, have been overly broad, plaintiff's request for information regarding only those candidates disqualified for steroid use was neither too general nor burdensome. Thus, an issue of material fact exists as to whether similarly situated applicants were disqualified for steroid use.

### b. Personal Animus

■ "The branch of equal protection law that protects individuals from unequal

treatment motivated by 'malicious or bad faith intent to injure' provides protection from adverse governmental action that is not motivated by 'legitimate governmental objectives.'" *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir.2005) (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995)). Here, plaintiff suffered several adverse governmental actions that were not prompted by legitimate objectives. Although the SCPD concluded in June 2001 that the October 2000 declination letter was a forgery, (Pl.'s 56.1 Statement exh. N), the waiver of appointment was not annulled until October 2001. (*Id.* exh. O). As a result, plaintiff's eligibility was not restored until more than a year had elapsed since he had passed the qualifying examinations and plaintiff's examination results were deemed stale, further delaying the possibility of appointment. Moreover, although defendants claim that plaintiff was neither disqualified nor rendered ineligible pending the outcome of the section 50 proceeding, (Defs.' 56.1 Statement ¶ 23), Town of Riverhead Police Captain David Hegermiller testified at his deposition that plaintiff was bypassed for appointment because the SCPD's Applicant Investigation Section informed him that plaintiff was not eligible based upon the section 50–58 proceeding. (Pl.'s 56.1 Statement exh. WW at 20, 25, 29, 34). In addition, even though plaintiff was assured that his rebuttal psychological report would be considered by the Appeal Committee, it appears that his appeal was rejected before the psychological report was received. (*Id.* exh. KK). Based upon the foregoing, a rational jury could conclude that Suffolk County's actions were based upon a personal vendetta against plaintiff.

### B. State Law Claims

Defendants contend that plaintiff's state claims, malicious prosecution and violation of N.Y. Civil Service Law, must be dismissed for failure to file a notice of claim as required by N.Y. General Municipal Law §§ 50–e and N.Y. County Law § 52(1). *See* N.Y. Gen. Mun. Law §§ 50–e (McKinney 2004); N.Y. County Law § 52(1) (McKinney 2004). Plaintiff did not object to this portion of defendants' motion.

N.Y. County Law § 52(1), the statute applicable to plaintiff's claims against Suffolk County, is broader than N.Y. General Municipal Law § 50–e. *Keating v. Gaffney*, 182 F.Supp.2d 278, 291 (E.D.N.Y. 2001); *Pustilnik v. Hynes*, No. 99–4087, 2000 WL 914629, at *7 (E.D.N.Y. June 27, 2000). Section 52 of the County Law provides, in pertinent part:

> Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature ... and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in accordance with section fifty-e of the general municipal law.

N.Y. County Law § 52. In turn, § 50–e of the General Municipal Law states that "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action ... the notice of claim shall ... be served ... within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50–e. However, where an action is brought to vindicate a public interest, rather than enforce a private right, a notice of claim is not required. *Union Free Sch. Dist. No. 6 of Towns of Islip & Smithtown v. New York State Human Rights Appeal Bd.*, 35 N.Y.2d 371, 379–80, 362 N.Y.S.2d 139, 320 N.E.2d 859 (1974).

The notice of claim provision of § 52 covers plaintiff's claims against Suffolk County and its entities, which includes the SCPD. Since plaintiff never filed a notice of claim upon the defendants within ninety (90) days of the date his claims arose, and the time to do so has expired, his state law claims must be dismissed unless his action was brought to vindicate a public interest. *See Turner v. County of Suffolk,* 955 F.Supp. 175, 176–77 (E.D.N.Y.1997); *Union Free Sch. Dist.,* 35 N.Y.2d at 379–80, 362 N.Y.S.2d 139, 320 N.E.2d 859.

 The amended complaint seeks "judgment in favor of the Plaintiff ... for back pay and front pay in the amount of the wages and all fringe benefits it is determined that the Plaintiff lost, or will lose, as a result of the Defendants' unlawful conduct...." (Am.Compl.para.35B). Although plaintiff further requests "relief as may be appropriate to ... protect other persons from such unlawful behavior", (*id.* para. 35F), "the disposition of the plaintiff's case will not directly affect the rights of others...." *Picciano v. Nassau County Civil Serv. Comm'n,* 290 A.D.2d 164, 169, 736 N.Y.S.2d 55 (N.Y.App. Div., 2d Dep't 2001). Plaintiff's allegations of unlawful conduct on the part of the defendants refer solely to conduct that affects his interest in employment as a police officer. *See Mills v. County of Monroe,* 59 N.Y.2d 307, 312, 464 N.Y.S.2d 709, 451 N.E.2d 456 (1983); *see also Keating,* 182 F.Supp.2d at 291. Since plaintiff seeks the enforcement of his private interests, the public interest exception to the notice of claim requirement is inapplicable. Additionally, plaintiff has not sought leave from this Court to serve a late notice of claim. *See Mills,* 59 N.Y.2d at 308, 464 N.Y.S.2d 709, 451 N.E.2d 456.

Accordingly, plaintiff's state law claims are dismissed.

VI. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is DENIED in part and GRANTED in part. The parties are directed to appear in my courtroom at 1010 Federal Plaza, Central Islip, New York on April 7, 2005 at 11:30 a.m. for a settlement and/or scheduling conference with authority or persons with authority to resolve this action. Further, the parties are directed to engage in good faith settlement negotiations prior to the conference.

IT IS SO ORDERED.