■ In the Matter of TOTEM TAXI, INC., Petitioner, v NEW YORK STATE HUMAN RIGHTS APPEAL BOARD, Respondent. — Proceeding initiated in this court pursuant to section 298 of the Executive Law to review a determination of the State Division of Human Rights, dated January 8, 1982, finding petitioner guilty of an unlawful discriminatory practice based on race. On the evening of January 5, 1980 in Elmira, New York, complainants, four black women, entered a taxicab owned by petitioner and driven by its employee, Richard Sopher. Sopher, in a nasty tone and raised voice, asked complainants whether they knew where they wanted to go. Thereupon, complainants, offended by Sopher's conduct, exited the taxicab only to hear the operator's caustic remark, "You bunch of niggers make me sick." When complainant Hutchinson replied to Sopher's remark, he retorted that he would punch her teeth in. On January 14 and 15, 1980, all four complainants filed complaints with the State Division of Human Rights charging petitioner with an unlawful discriminatory practice in violation of the Human Rights Law. After an investigation, the division made a finding of probable cause on January 24, 1980. A hearing was held on May 5, 1981 and, by decision and order dated January 8, 1982, petitioner was found guilty of a discriminatory practice, and, further, was ordered to pay each complainant an award of $250, which had been reduced from an award of $500 each due to mitigating circumstances. Petitioner appealed the division's order to the New York State Human Rights Appeal Board. The four-member board evenly split in deciding the appeal and, pursuant to subdivision 4 of section 297-a of the Executive Law, the division's order stood as issued. Petitioner commenced this proceeding seeking judicial review (Executive Law, § 298). There must be a confirmance. The division correctly found that petitioner's driver violated section 296 (subd 2, par [a]) of

the Executive Law in using a racial epithet. That law provides that: "It shall be an unlawful discriminatory practice for any person, being the * * * employee of any place of public accommodation * * * because of the race * * * [or] color * * * of any person * * * to refuse * * * or deny to such person any of the accommodations * * * thereof". The division expressly found that petitioner, through its employee, discriminated against complainants by denying them public accommodations because of their race or color. In determining that respondent's findings of fact are conclusive since they are supported by sufficient evidence on the record considered as a whole (Executive Law, § 298; *State Off. of Drug Abuse Servs. v State Human Rights Appeal Bd.,* 48 NY2d 276, 284), we specifically reject petitioner's contentions that no violation occurred since the racial epithet used by its driver was spoken after complainants exited the cab, and that complainants were not denied or refused a public accommodation since a second taxicab owned by petitioner drove them where they wanted to go without incident. Petitioner's driver's nasty tone while complainants were in his vehicle merely masked his feelings of discrimination which became clearly evident by the verbalized racial slur when the four passengers left the taxicab. Next, the fact that another of petitioner's cabs serviced complainants is without consequence since the statute prohibits discrimination, not just repeated discriminatory acts (*Matter of Imperial Diner v State Human Rights Appeal Bd.,* 52 NY2d 72, 78). Further, petitioner is the sole taxi service in Elmira. We also find without merit petitioner's contention that *respondeat superior* is inapplicable to this case. While it is true that in *Matter of State Univ. of N. Y. v State Human Rights Appeal Bd.* (81 AD2d 688, affd 55 NY2d 896) this court noted that "[t]he doctrine of *respondeat superior* * * * has not been accepted in cases involving sex discrimination" (*id.,* at p 689), nothing in that decision precludes the doctrine's application to a common carrier's discriminatory conduct toward the public. Significantly, the Court of Appeals recently held in *Hudson Tr. Lines v New York State Human Rights Appeal Bd.* (47 NY2d 971) that a bus company was liable for the unlawful discriminatory acts of its bus driver even in the absence of proof showing knowledge or acquiescence on the company's part. Turning to the issue of damages, we hold that where, as here, a complainant has suffered mental anguish, humiliation and emotional trauma as the direct result of a discriminatory act, compensatory damages may be awarded (*Cullen v Nassau County Civ. Serv. Comm.,* 53 NY2d 492). In this case, each complainant testified to the traumatic effect the incident with petitioner's employee had on her and the other women. Finally, we point out that it is well settled that the time schedules specified in section 297 of the Executive Law for the performance of certain acts on the part of the division are directory and not mandatory (see *Union Free School Dist. No. 6 v New York State Human Rights Appeal Bd.,* 35 NY2d 371). Petitioner's contention that such interpretation is contrary to the legislative intent as reflected in the 1977 amendments to section 297 (see L 1977, ch 729, §§ 1, 2) was recently answered by the Court of Appeals in *Matter of Sarkisian Bros. v State Div. of Human Rights* (48 NY2d 816, 818), wherein it stated: "[T]he mere passage of time normally will not constitute substantial prejudice in the absence of some showing of actual injury to the respondent. The force of this principle has not been diluted by the recent modifications of the time periods provided in section 297 (see L 1977, ch 729)." There has been no showing herein of injury or prejudice to petitioner by the minimal delay on the part of the State Division of Human Rights. Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Sweeney, Main, Mikoll and Yesawich, Jr., JJ., concur.