OPINION OF THE COURT
Chief Judge Wachtler.
The question on this appeal is whether an employer can be held liable in damages pursuant to the State Human Rights Law (Executive Law § 296) for the discriminatory act of an employee when there has been no showing that the employer approved of, or acquiesced in, the employee’s act. The employer who was held liable below has appealed by leave of this court.
On January 5,1980 four black women, who had been visiting a relative at St. Joseph’s Hospital in Elmira, called Totem Taxi for a cab to take them home. When the women entered the cab, operated by one of Totem’s employees, one of the women told the driver she wanted to go to College Avenue. Another asked him to stop at DeWitt Avenue. At this point the driver said in a belligerent and nasty tone: “Do you people know where you want to go? * * * Why don’t you make up your minds”. One of the passengers said: “We don’t have to take this type of harassment” and left the cab followed by the others. When they had exited the cab the driver said: “You bunch of niggers make me sick”. One of the women replied: “You whities make me sick”. The driver then got out of the cab, approached that woman and threatened to knock her teeth down her throat. The women returned to the hospital and again called Totem, the only cab service in the city, and requested another cab which took them home without incident.
*303 It was found by the hearing officer to be the policy of Totem Taxi to treat all persons with decency and courtesy regardless of color or religion. When the president of the corporation learned of this incident he apologized “profusely” to the complaining passenger and suspended the driver for several months.
Each of the passengers later filed a complaint with the State Division of Human Rights claiming that she had been subjected to an unlawful discriminatory practice relating to a public accommodation in violation of this State’s Human Rights Law (Executive Law art 15). After a hearing the charge was sustained. It was found that the taxi cab driver was guilty of discriminatory acts and that the company was responsible. The hearing officer stated that the “inability [of the employer] to have absolute control over the actions of all of his drivers” together with the immediate apology and suspension of the offending driver “must be considered” but only in mitigation of damages. Totem was held liable for the driver’s insulting behavior because it “had an employer-employee relationship with [the driver] and had the duty of hiring drivers who would not discriminate”. The hearing officer held that each of the complainants had suffered compensable damages in the amount of $500. This was reduced to $250 because of the “mitigating circumstances”.
The employer appealed the Division’s order to the Human Rights Appeal Board. The four members of the Board were evenly divided on the question as to whether the employer could be held liable under the statute solely on the basis of respondeat superior. Because the Board was unable to obtain a majority vote it determined that the Division’s order remained in effect.
The employer then commenced this proceeding seeking judicial review (Executive Law § 298) raising a number of issues, all of which were rejected by the Appellate Division. With respect to the employer’s liability for the racial slurs of its driver, the court found that damages were justified by petitioner’s status as a common carrier. The court stated: “Significantly, the Court of Appeals recently held in Hudson Tr. Lines v State Human Rights Appeal Bd. (47 NY2d 971) that a bus company was liable for the unlawful discriminatory acts of its bus driver even in the absence of proof showing knowledge or acquiescence on the company’s part.” (98 AD2d 923, 924.)
On this appeal petitioner notes that in a number of recent decisions, affirmed by this court, it has been held that an employer is not liable under the State Human Rights Law for the discriminatory acts of an employee, unless the employer had *304 knowledge of or acquiesced in the discriminatory conduct (Hart v Sullivan, 55 NY2d 1011, affg 84 AD2d 865; Matter of State Univ. of N. Y. v State Human Rights Appeal Bd,., 55 NY2d 896, affg 81 AD2d 688; Matter of General Motors Corp. v State Human Rights Appeal Bd., 54 NY2d 905, affg 78 AD2d 1006). Because in this case the agency did not demonstrate that the employer approved of, or acquiesced in, the employee’s act, the petitioner urges that the Division’s determination cannot be sustained.
The Division contends that these cases are distinguishable because they all dealt with the employer’s responsibility for the discriminatory acts of one employee against another (Executive Law § 296 [1]) and not with discrimination by employees against members of the public in connection with the use of public accommodations (Executive Law § 296 [2]). In the latter type of case it is urged that a different and more demanding rule is applicable.
First, the Division argues that the law is settled that the statute imposes strict liability on the employer for all discriminatory acts of its employees in connection with public accommodations. The Division relies on our decisions in Hudson Tr. Lines v State Human Rights Appeal Bd. (47 NY2d 971) and Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights (35 NY2d 143), noting that in each of those cases, involving public accommodations, the employer was held liable even though there was no showing that the employer had knowledge of or acquiesced in the employee’s discriminatory act. In those cases, however, no issue was raised concerning the employer’s liability for the acts of the employee (see also, 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176 [dealing with discrimination in housing, Executive Law § 296 (5)]). When in subsequent cases the issue has been raised, in the context of employment discrimination, this court has uniformly held that the employer cannot be found to have violated the statute solely because of an employee’s discriminatory act; in order to hold the employer responsible the agency must demonstrate that the employer approved of, or acquiesced in, the employee’s conduct (Hart v Sullivan, supra; Matter of State Univ. of N. Y. v State Human Rights Appeal Bd., supra; Matter of General Motors Corp. v State Human Rights Appeals Bd., supra).
Secondly, the Division argues that this rule should not be extended to discrimination involving public accommodations, but that a rule of strict employer liability should apply by *305 analogy and extension of common-law concepts relating to common carriers, innkeepers, and the like. However, we are dealing here with an independent statutory remedy which is not governed by common-law principles (Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights, supra). Although our prior decisions defining the scope of an employer’s liability under the statute happened to involve employment discrimination, there is no indication that the Legislature intended to impose greater liability on the employer when the employee’s act relates to public accommodations.
Unlawful discriminatory practices are defined in Executive Law § 296. Subdivision 1 of that statute prohibits discrimination in employment and, by its terms, applies only to “an employer or licensing agency”. Subdivision 2 of the statute prohibits discrimination in “any place of public accommodation”, which broadly encompasses public services and conveniences (Matter of United States Power Squadrons v State Human Rights Appeal Bd., 59 NY2d 401,410) and specifically includes “all public conveyances operated on land or water or in the air” (Executive Law § 292 [9]). By its terms, subdivision 2 applies to “any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation”. Neither subdivision provides that a person who employs one who commits a discriminatory act is also guilty of a violation irrespective of fault. If there is any ambiguity in the statute with respect to employer liability for employees’ acts it is not to be found in the subdivision dealing with public accommodations. That subdivision separately identifies the owner or proprietor and the employee as persons independently subject to the statute and expressly imposes liability only on the person who actually commits the discriminatory act. Thus the employer cannot be held liable for an employee’s discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it.
In this case there is no evidence that the employer was guilty in that regard. On the contrary the evidence shows, and the hearing officer found as a fact, that the employer had adopted an antidiscrimination policy before this isolated incident occurred, and when the president of the company learned of it he immediately apologized and suspended the offending driver. Although an employer may be liable for a single act of discrimination to which the employer is a party (Matter of Imperial Diner v State Div. of Human Rights, 52 NY2d 72), it cannot be rationally concluded under the present statute that an employer has been *306 guilty of discrimination whenever any employee at any level commits, out of personal pique, a disapproved and unanticipated discriminatory act.
Finally we note that we are all in agreement that this is a most lamentable incident. The passengers were subjected to ill-mannered abuse, which is not only embarrassing and demeaning to them but to all civilized persons who hear of it, including apparently the owner of the taxi cab in which it occurred. It is the kind of conduct which the Human Rights Law condemns and seeks to eliminate. It may be, as suggested by the concurring opinion, that this can best be accomplished by holding the employer responsible without any showing of fault, or by presuming him guilty until he proves his innocence, a burden arguably met in this case. The question, however, as to whether such measures are needed to insure the basic fairness which the Human Rights Law is designed to encourage involves policy decisions solely within the province of the Legislature.
Accordingly, the order of the Appellate Division should be reversed, the petition granted, and the determinations of the State Human Rights Division and the State Human Rights Appeal Board annulled.